JANUARY 1830

Rutledge<br>v.<br>Rutledge.

---

## POPE v. BRANDON, et al.

1. A corporation may assign its effects to a trustee, for the benefit of creditors.
2. Such assignment will be good against a judgment creditor, though the charter provides that the stockholders shall be personally responsible for the debts of the corporation.
3. And the absence of the signatures of the creditors, does not invalidate the deed, it being of all effects, and for the benefit of all creditors unconditionally.
4. Nor is the deed void, because the trustee is the President of the institution, and executes the deed as a grantor as such.
5. Inadequacy of consideration, to invalidate a deed, must be gross and apparent.
6. A judgment rendered during the term, does not relate back to the first day of the term, so as to defeat a *bona fide* purchaser or assignee.
7. The acts or omissions of a trustee cannot defeat the rights of the assenting creditors in the deed of trust, unless they contribute to the wrongful act.

THIS was an action of trespass to try titles, brought by T. & W. Brandon, C. C. Clay, J. W. McClung, and B. Brandon, to recover possession of the lot and building formerly occupied as a banking house, by the Planter's and Merchant's Bank in Huntsville. The action was originally brought against S. Cruse, as tenant in possession, but Leroy Pope claiming the title, he was admitted as defendant. The venue was changed to Morgan county, where the cause was tried at October term, 1828, when a verdict was found for the plaintiffs. The facts were as follows:

At May term, 1826, in Madison Circuit Court, an action of trover brought by T. & W. Brandon against the

51

JANUARY 1830. President, Directors & Co. of the bank, was tried, and
judgment rendered for the defendants.   At January term,
Pope      1828, T & W. Brandon, on a writ of error to the Supreme
v.       Court, procured a reversal of that judgment, and a judg-
Brandon et al.  ment was rendered for them against the bank in that suit,
for $2,292; on the first of February, which was a day
of said term, and on the same day, the charter of the bank
expired. On the 5th of March, 1828, an execution was is-
sued on this judgment, and it was levied on the banking
house and lot, as the property of the bank, and on the
7th April, 1828, it was sold by the sheriff, and purchased
by the plaintiffs below for $1,005, and they received the
sheriff's deed for it.

The defence was, that, on the 7th of January, 1828, the
same day the Supreme Court commenced its session, the
bank had, by a deed of trust, conveyed all its property to
Leroy Pope, the plaintiff in error, who was the President
of the bank, in trust for the payment of debts, &c. due by
the bank.

The deed was executed by Pope, the President, and se-
ven Directors, and also signed by twelve stockholders, and
was under the corporate seal of the bank.   It recited, that
whereas, on the first of February next, the charter of the
bank would expire, a considerable portion of their notes
still being in circulation, unredeemed, and that the bank
owed divers debts, possessed property, and was entitled to
debts due to it; and that they were desirous to appropriate
their corporate property to the payment of their just debts;
that in consideration thereof, and of one dollar paid, they
granted to Pope all their property, real and personal, and
all effects, credits, notes, accounts, books, vouchers, &c.
of all kinds, in trust, to pay, in the first place, all expen-
ses of the trust; secondly, all just claims against the bank
in full, if the funds were sufficient, and if not, then ratea-
bly; and thirdly, if the effects were more than sufficient,
then the surplus to be distributed among the stockholders
in their proper proportions.   To the deed, was appended
a list of notes due, and to become due to the bank,
amounting to $30,473 14, judgments due to the bank,
$22,803 15; and debts due by account $1058 60; also, a
list of property, embracing the banking house, and
some furniture, &c. and a list of debts due by indi-
viduals to the bank, amounting to $284 83. The deed
was recorded the 23d of February, 1828.   Evidence
was also introduced by Pope, to prove that he had ac-

cepted the trust, and entered on the discharge of the du- ties of trustee; that the transaction was of public notoriety in Huntsville; that immediately after the deed was executed, he had taken possession of the property, and had placed it in the possession of S. Cruse, as his agent; that the Cashier of the bank had ceased to be such from the date of the deed; that the Directors never afterwards assembled, except a committee whom they had previously constituted to superintend the destroying of bills taken up by the trustee from circulation; that he had redeemed bills of the bank for more than $11,000; that he had paid by his own note, with security, $21,233 60, due by the bank to the United States; that with a portion of the notes transferred to him, he had secured payment of another debt due by the bank, of $2,500; that about $12,493 of the debts transferred to him, were due by insolvent persons; tha he had procured confessions of judgments on debts to the amount of $5,000, by giving stays of execution yet unexpired, and that he had obtained judgment for another debt of $1,400, which was still unsatisfied; also, that a large portion of the judgments mentioned in the lists, were due in notes of the bank. It was also proved that Cruse transacted his own private business in the bank, and that Pope removed all the notes and property to his own house, but that the sign of the bank had continued over the door till the time of trial. A witness stated he believed the bank was able to pay all its debts. On this proof, the presiding Judge instructed the jury, that "if they believed from the evidence, that the said Pope had never made a proposition to T. & W. Brandon, to secure to them a rateable proportion of their said judgment against the bank, that the deed to Pope was fraudulent as to them, and that the plaintiffs were entitled to recover." To this instruction, Pope excepted, and this is now here assigned for error.

HOPKINS, for the plaintiff in error, in argument, insisted on the following propositions:

1. That the deed to Pope, which the instructions admitted was valid when made, could not become void by the acts of the trustee.

2. That for any breach of trust, a Court of Chancery alone is competent to afford a remedy.

3. That the deed was made by a creature of the law in its corporate name, and in the exercise of its lawful powers, to Pope in his individual capacity, and is not void upon

JANUARY 1830.

Pope
v.
Brandon et al.

*a* 2 Cranch,
127. 12
Wheat. 83. 3
Am. Dig. 143
*b* 4 John. Ch.
Rep. 522. 11
Wheat. 87.
19 John. Rep
218. 2 John.
Ch. R. 182.
8 John. R.
352. 4 John.
Ch. R. 138.
*c* 4 Day, 146.
5 Mass. R.
13 Mass. R.
146. 2 John
Ch. R. 35. 14
Vesey, 289,
290. 2 Vesey
627. 2
Schoales &
Lefroy, 507.
17 Mass. R.
454, 552. 1
Munroe's R.
105.
*d* 4 Munford's
R. 539, 541.
13 John. R.
471.
*e* 4 Day's R.

the principle which prevents any legal right from being created in favor of a person in his individual capacity, by an obligation upon the same person in the same capacity. *a*

4. That there was no fraud, either actual or constructive in the execution of the deed; and justice, and the interest of the bank and its creditors, required the conveyance which the bank made. *b*

BRANDON, for the defendants. The deed of assignment is void. No adequate consideration is expressed in it for the property conveyed, and no creditor has accepted it. *c* The judgment of T. & W. Brandon, bound the land; a lien credited by judgment has relation back to the commencement of the term at which judgment was obtained. *d* The conveyance made by the directory of the bank was void also, because the Directors exceeded their authority. They were only the agents of the stockholders, appointed to effect certain purposes concerning the monied operations of the bank, and could not assign away the property of the stockholders, particularly by an instrument which was to have an effect after the determination of the corporation. The deed should have been made on the vote of the stockholders of the corporation, and it should appear to have been so made, else it is not evidence. *e* The stockholders are liable for the debts of the institution, and their property also; and if they have not legally assigned away their property, and divested themselves of the right to it, it is still liable to pay their debts.

By JUDGE COLLIER. The record offers for our examination these topics:

1. The character of the deed from the President, Directors, & Co. to the plaintiff, and the sufficiency of its consideration.

2. The lien created by a judgment upon real estate; its nature, how it operates, and when it begins.

3. The legality of the Judge's instructions to the jury.

1. The deed is a conveyance of all the property of the bank, for the payment of its debts, without preference or priority to its creditors. This being professedly the object of the deed, the Messrs Brandon's, with regard to the property conveyed, are as favorably situated as any other creditors. And to ascertain whether they can vary the situation assigned them in the payment of their demand, and subject the property transferred, to the satisfaction

of their judgment, without regard to other creditors, are
inquiries into the validity of the deed, which become
material.

The deed is absolute, and beyond the control of the
bank, and therefore does not require, as essential to its op-
eration, the positive assent of any of its creditors. In this
respect, there is an obvious dissimilarity between an as-
signment for the benefit of all creditors, and one which
provides only for those creditors, who consent to come in
under its provisions. In the one case, the deed provides
for no act to be done by the creditor; in the other, there
is a provision requiring an express stipulation on his part
to be paid as it directs. The reasoning of the Court in
*Robinson v. Rapelye & Smith*, recognizes this distinc-
tion:[a]

The right of a debtor to make a general assignment of
his effects for the benefit of his creditors, has not been con-
troverted in argument; but it is insisted that such right
does not extend to a trading corporation. On this point,
no authority is cited; and as our own resources furnish us
with none that favors the idea of a restriction of corporate
powers in this particular, we must therefore consider it
upon principle. The right of a debtor to vest his property
in trustees for the benefit of his creditors, results from the
control which every one possesses by law over his own es-
tate. This control continues free from legal restraint un-
til some one else acquires an interest in the same estate.
It cannot be that a corporation is under greater restraint in
regard to the use and enjoyment of its estate, than a natu-
ral person, unless a restriction is imposed by positive law,
or may be inferred from its character, and the object of
its existence. Chancellor Kent, in speaking of the pow-
ers and capacities of corporations, says, " it was incident at
common law, to every corporation, to have a capacity to pur-
chase and alien lands, unless they were specially restrained
by their charters, or by statute. Independent of positive
law, all corporations have the absolute *jus disponendi*,
neither limited as to objects, nor circumscribed as to quan-
tity. This was so understood by the Court and bar in the
modern case of the *Mayor and Commonalty of Colches-
ter v. Lowten*.[b] And this common law right continued in
England, until it was taken away as to religious corpora-
tions, by several restraining statutes in the reign of Eli
zabeth."[c] This, we believe to be a correct view of the
powers of corporations on the point we are considering.
But the right of the bank in this case, to alien its estate,

a Ante page 86.

b 1 Ves. & Bea. 226, 237 240, and 244.

c 2 Kent's Com. 227.

JANUARY 1830.

Pope
v.
Brandon et al.

a Laws of Al.
p. 34, section
4.

b Laws of Al.
39.

does not depend for its existence upon the common law; it is expressly given by its charter, [a] and must be taken to exist without limitation as to object.

It is argued for the defendants, that it was not competent for the bank to make any disposition of its effects, which would relieve it from the liability to satisfy directly the judgment of the Messrs Brandon's. To sustain this argument, we are referred to the 11th section of the charter, [b] which, after declaring the liability of the stockholders to the payment of the debts of the bank, concludes thus: "but this provision shall not be construed to exempt the said corporation, or the lands, tenements, goods or chattels of the same, from being also liable." This provision was doubtless introduced *ex industria*. The Legislature that enacted the charter, did not intend that the remedy against a stockholder should be exclusive of the appropriate remedy against the corporation; and lest it might be thus unnaturally construed by this provision, they declared the law, and did not introduce a new liability, or impose any restriction upon the bank in the disposition of its estate.

Again, the charter must be construed upon a view of all its parts, and such a construction given, as that every part may be operative, *ut res magis valeat quam pereat.* If the 11th section was to receive the construction insisted on, the 4th section, would, to some extent, be inoperative. They must be both thus construed: the 4th is an authority to sell and dispose of the corporate estate; the 11th makes that estate subject to the payment of the debts of the corporation, until it is sold and disposed of, and thus construing them, each exercises its full scope and effect. Was reason necessary to illustrate further the fallacy of the argument we are examining, the inconvenience that would have resulted from thus uniting the powers of the bank, interposes a powerful objection to its justness. It is essential to the prosperity of a banking institution, that it should be permitted to marshall its resources, free from legislative control, further than policy would dictate. In the progress of its negotiations, it may be compelled to receive real or personal estate, in discharge of the liability of its debtors; and if it were not allowed to change its property into an active capital, its operations might be paralysed, its usefulness impaired, and its business rendered unprofitable. But this objection to the powers of the bank, need not be further examined, for it is apparent from a view of the charter itself, that it has no just foundation.

JANUARY 1830.

Pope
v.
Brandon et al.

The defendant's counsel have impugned the deed of assignment, upon a suggestion that it is not sustained by a sufficient consideration. Chancery has lent its aid in some cases, which, are however rare, to avoid a contract founded on a gross inadequacy of consideration; but in these cases the inequality was so great as to shock the understanding of mankind, and to induce the belief that the transaction was fraudulent. It is very clear, that the deed from the bank to the plaintiff is not objectionable for gross inadequacy of consideration. The extent of the consideration is not set forth in the deed; it recites that the bank is indebted to sundry individuals, in the sum of two hundred and eighty-four dollars, and eighty-four cents; and that a large portion of their bills is yet unredeemed. These are directed, with all other debts of the bank, to be paid by the plaintiff. The nominal amount of the evidences of debt, and the estimated value of the property conveyed, is about sixty thousand dollars. Of the debts, twelve thousand dollars and upwards, will be lost by insolvencies. The plaintiff has, since the execution of the deed, paid and secured of the debts owing by the bank, about thirty-five thousand dollars, and it does not appear what amount is now due from it. This statement of facts may suffice to shew, that the suggestion of gross inadequacy of consideration, could it be entertained at law, is not sustained by the record.

The legal validity of the deed is also questioned by the defendant's counsel, upon the supposition, that the plaintiff is both grantor and grantee. It is certainly a correct proposition, that one person cannot occupy *at law* both these situations at the same time, in regard to the same object. But the objection in this instance, it is apprehended, is founded upon a misconception of the nature and effect of the assignment made by the bank. It supposes that Leroy Pope assigns to Leroy Pope, when, in truth, the President, Directors & Co. make a conveyance in their corporate character to the plaintiff. The interest which he had in the property conveyed to him was different from that which he had in property that belonged to him in his individual capacity. Nothing is more usual than for a corporation to derive property by purchase, from a corporation.[a] Transactions between persons thus circumstanced, have been always recognized, and in principle they appear to us unobjectionable. The converse would establish the doctrine, that a bank could not coerce the collection

[a] Waring v. Cataw. Co. 2 Bay. 109.

of a note discounted against one of its stockholders, be-cause he was a creditor; or, that a corporator could not sue the corporation, because he was a constituent part of it. This may be considered strange, yet it is a legitimate deduction from the argument. The deed, so far as the re-cord discloses, is free from any objection of actual fraud, and, as we have shewn, is not in itself constructively frau-dulent; hence the property in question could not have been sold under the Messrs Brandon's execution, unless the deed from the bank may be invalidated by an objec-tion other than that of fraud.

2. The deed of assignment to the plaintiff, bears date on the day when the term of this Court commenced, at which the judgment in favor of the Messrs Brandon's was render-ed; but the judgment was not rendered until the first day of February, more than twenty days thereafter. From these facts, it is argued for the defendants, that the judgment relates retrospectively to the first day of the term, and from that period created a lien on the real property of the bank, in favor of the Messrs Brandons, which it was not competent for the bank to divest by its transfer on that or any succceeding day. It is a well settled rule of the com-mon law, that a judgment operates to restrain the control of the debtor over his real estate, so as to defeat its satis-faction; but this rule, it is believed, does not give to a judg-ment a retrospective operation against a *bona fide* assignee. The reason of the rule is founded upon the supposition, that the proceedings of a Court of record, are of public notoriety; and that he who purchases real estate after judgment, purchases with a knowledge of its existence. To give effect to purchases under such circumstances, would be a fraud upon the judgment creditor. The rea-son, it is apparent, will not extend to give judgments a lien from a period of time anterior to their rendition; for until then, the purchaser cannot be advised of its existence, and consequently cannot be held to have purchased in fraud of a judgment creditor; *cessante ratione, cessat ipsa lex.*

The argument of the retrospective influence of judg-ments is predicated upon the idea, that, as the whole term is considered in law as but one day, every thing done du-ring the term must relate to its commencement. This conclusion does not necessarily follow. It is true that the term of a Court is for some purposes but one day; as a plea put in on the last day of the term, is a plea of the first

day of the term, and upon this idea of continued sitting of the Court, Judges may alter and amend their judgments in the same term. This fiction, like all others, which the law acknowledges is designed to advance, but never to defeat the purposes of justice. *In fictione juris, semper consiste æcquitas.* To give a retroactive effect to a judgment, would be rather subversive than promotive of justice, as a purchaser could not be constructively advised of it, until it had an actual existence. So particular have the Courts been in adjusting the question of priority, between the fair purchaser and the judgment creditor, where the deed of sale and the judgment bear date of the same day, that inquiries are allowed to ascertain the precise period of the execution of the one, and the rendition of the other.[a] Having shewn that a judgment can only operate prospectively against a fair purchaser, we are brought to the third and last point of inquiry.

*a* Ex parte Stagg. 1 Nott & Mc-Cord, 405.

3. Whatever of plausibility or force of argument may be brought in aid of the instructions of the Judge to the jury, these arguments must not be here considered and discussed. They were brought to the view of this Court, in *Robinson v. Rapelye & Smith,* decided at the last term, and in that case fully and satisfactorily examined. In reviewing them, the Court in its opinion, says, "no act of the trustees can affect the assenting creditors, unless they, in some degree, contributed to it, because the trustees are only agents for the assignors." The deed of assignment in that cause provided for the assent of the creditors, by the execution of the deed, many of whom executed it. This provision constitutes the most material difference between that case and the present; yet the principle embraced in the quotation from that opinion, applies here. And let it be conceded that the plaintiff, as trustee, should have proposed to secure to the Messrs Brandons, a rateable amount of their judgment, and omitted this duty; the assignment for that cause could not be avoided, unless it appeared, that in this neglect of duty, the plaintiff was influenced by his assignors; a circumstance which the Judge seems not to have noticed. For this reason, the instruction is erroneous; and for the additional cause, that it supposes the plaintiff was obliged by the deed to offer to secure to the Messrs Brandons a rateable portion of their judgment, when no other obligation was imposed than to pay their judgment *pari passu* with the other creditors. We have been more prolix in expressing our opin-

52

ion than was necessary to a decision of the question immediately before the Court, and have considered the material points discussed, which it appeared from the evidence in the record might come up, should the case be remanded. We have taken this course, as it was intimated from the bar, that, should the judgment here be adverse to the defendants on all the points introduced in argument, it would put an end to further controversy.

It is the result of our conclusions upon all the points, that the judgment be reversed, and if the defendants desire it, that the cause be remanded.

Judgment reversed.