JANUARY TERM, 1843.       735

Mansony and Hurtell v. The United States Bank and its Assignees.

MANSONY AND HURTELL v. THE UNITED STATES
BANK AND ITS ASSIGNEES.

1. The mortgagee of land entitled to the possession, or to the rents, may recover of a tenant holding under a lease from the mortgagor, the rents accruing subsequent to the time when the former become entitled ; unless previous to the notice the tenant paid them to the mortgagor ; and in such cases the statute dispenses with the necessity of attornment.

2. Where a judgment at law is enjoined, upon the complainant executing a bond with surety, the injunction suspends the lien of the judgment.

3. *Quere?* Is not an original, or *alias fieri facias*, issued after the defendant's death, a nullity as it respects the lands of which he died the proprietor.

4. An order appointing a receiver in a case in Chancery, and directing an attachment to issue against certain tenants, in possession of a part of the property in question, unless they attorned to the receiver within a prescribed time, is not such a final order or decree as can be reviewed on writ of error, while the cause is pending in the Court of Chancery.

WRIT of Error to the Court of Chancery sitting at Mobile.

In the cause out of which this case arises, three bills have been filed; the first at the suit of Jos. Cowperthwaite, Thos. Dunlap and Herman Cope, against Isaac H. Erwin, as administrator *cum testamento annexo* of Henry Hitchcock ; in the second, "The President Directors and Company of the Bank of the United States," a corporation of the State of Pennsylvania, is added as a complainant, and the widow of Mr. H. and her children, all of whom are infants, are joined as defendants; and in the last, the names of the complainants in the first bill are prayed to be stricken out, and in their stead the assignees of the Bank are stated by name, and prayed to be joined with the corporation as complainants.   From the several bills considered together, it appears that Henry Hitchcock, late of Mobile, was on the fourth day of July, 1838, indebted to "The President Directors and Company of the Bank of the United States," in the sum of six hundred and twenty thousand five hundred and thirty dollars and ninety-six cents.   To secure which sum Mr. Hitchcock and wife, on that day, executed to Joseph Cow-

perthwaite, Thomas Dunlap and Herman Cope, a deed of mortgage on a large and valuable real estate, situate in the city of Mobile; conditioned to be void, if the debt intended to be secured should be paid at certain periods prescribed by the deed. Mr. Hitchcock in his lifetime having failed to pay one of the instalments which first became due, the mortgagees filed their bill in Chancery for a foreclosure of the mortgage. To this bill the mortgagor answered, setting up a defence, which, if sustained and allowed would not only have avoided the mortgage, but have defeated a recovery of any part of the debt. While that cause was thus pending, Mr. H. died, having made his will, in which his wife was appointed sole executrix, and as it is alledged, constituted her sole devisee of all his estate, real, personal and mixed, with a power to dispose of the same by public or private sale, for the purpose of paying his debts.

Mr. H. after he had filed his answer to the bill of Messrs. Cowperthwaite, Dunlap and Cope, repeatedly expressed the determination to pay his indebtedness to the United States Bank, by a transfer of so much of the property embraced by the mortgage as was sufficient for that purpose; and actually endeavored to originate a negotiation through which a settlement would be effected. But the death of the mortgagor, on the 11th August, 1339, closed all efforts to compromise the controversy. After that event, Mr. Cope, as agent of "The President Directors and Company of the Bank of the United States," came to Mobile, for the purpose of negotiating with the representatives of Mr. H. for the immediate possession of the mortgaged property, and thus putting an end to litigation. In furtherance of this object Mr. C. had many interviews with James Erwin, the brother of Mrs. Hitchcock, who represented himself to be fully authorized by her, and those who were interested in the estate of Mr. H. to treat with him, for the purpose of adjusting the controversy then pending—and it is accordingly charged, that Mr. E. was fully authorized by his sister, as devisee under the will of her husband, to exercise the power which he assumed.

A settlement was effected on the following terms, viz: The complainants were to advance one hundred and fifty thousand dollars in cash, which sum Mr. E. represented to be indispensable to pay the creditors of Mr. H., who were unprovided for;

Mansony and Hurtell v. The United States Bank and its Assignees.

this sum being paid, the complainants were, in virtue of a conveyance from Mrs. H. as the devisee under her husband's will, to enter upon and enjoy the mortgaged property without molestation of the representatives of Mr. H.; the bill filed against the mortgagor was to be abated by the failure to revive it; and the executrix named in the will was to decline taking upon herself its execution, and in her stead a friendly administrator was to be appointed, with the concurrence of the parties to the settlement, who should acquiesce therein.

In pursuance of the adjustment, the complainants paid to Mr. E. one hundred and fifty thousand dollars, to be applied to the debts of the creditors of Mr. H., whose debts were unsecured; the devisee, by deed of release, did convey to the complainants all her legal and equitable estate in the mortgaged premises, and they in turn executed to her a release of all demands against the estate of her deceased husband, saving such as were reserved by the mortgage executed by him. In addition to all which, the devisee made to the complainants an assignment of all the leases which were outstanding on the premises, and they consequently supposed that their possession was undisputed.

*Further*—Sometime previous to the negotiation with Mr. E. he purchased at a sale under execution, the reversionary interest of Mr. H. in eight store houses which had been conveyed by the mortgage, executed by the latter to secure his indebtedness to the Bank of the United States, for which he paid fifty dollars and received a sheriff's deed. Mr. E. represented to the complainants, that he purchased the houses for the purpose of strengthening his position in the negotiation. The eight houses were valued by Mr. H. in his mortgage at two hundred thousand dollars, and Mr. E. proposed to convey to the complainants whatever title he had acquired by his purchase, which was believed by the complainants to be a mere equity of redemption; but he requested the complainants to insert in the deed as its consideration, the sum of one hundred and fifty thousand dollars, stating that he would be thus left more at liberty in using that sum, which he was to receive, for the payment of the unsecured creditors of Mr. H. The wishes of Mr. E. were acceded to, but without any intention on the part of any one, of varying the terms of the settlement.

Isaac H. Erwin, a brother of Mrs. H., was appointed administrator of Mr. H. with the concurrence of the complainants, Mrs. H. and Mr. J. E. with a view to carry out the terms of the agreement they had entered into. But instead of thus acting, the administrator by every means in his power has molested the complainants, advertising that they were not in possession of the premises, and cautioning all persons not to pay them rent; he has leased much of the property and received a large portion of the rent, in violation of the settlement and to the destruction of complainants' security.

The bill sets out that the administrator pretends to have some claim to the premises, has asserted a property therein, &c., and prays that the claim may be inquired into, the debt due the Bank paid, or else that their title may be quieted and possession undisturbed, &c. Further, that the administrator be enjoined from all interference with the property, the rents, profits, &c.

Isaac H. E. Mrs. H. and her four infant children are the only defendants, the former of whom has answered. In his answer he denies that he was a party, or in any manner concerned in the negotiation, which was consummated by a settlement between the United States Bank, through its agent and Mr. J. E. He has refused to give effect to that settlement as administrator *cum testamento annexo,* for the reason that he conceives his powers will not authorize him to do so; besides his sureties and the creditors of the testator who are unprovided for, to a very large amount, object to his taking any steps which may impose liability upon the former, or jeopard the rights of the latter. In fine, he declares the honesty of his course, and a fixed purpose to adhere strictly to his duty, as it is defined by law.

At the term of the Chancery Court, holden in May, 1841, a motion was made for an injunction in this cause, to restrain the administrator *cum test. an.* from intermeddling in any way with the mortgaged premises described in the bill, or the rents and profits thereof; also "to appoint a receiver to be let into the possession, and have the management of, the mortgaged premises, and to collect and receive the rents and profits." These motions were granted in the terms in which they were asked, the Court ordering that the receiver collect and receive

as well the rents in arrear, which have accrued since the 8th February, 1840, as the rents to become due from the tenants. Further, that the receiver manage as well as let the estate, with the approbation of the Master, and pass his accounts and pay in his balances from time to time, and invest the same as the Court may direct. The administrator was ordered to deliver up to the Master all notes, &c. in his possession. If the parties could not agree in the appointment of a receiver, the Master was directed to appoint, and in either event take a bond with sureties in double the amount of the annual income of the estate, conditioned, &c.

The parties not being able to agree, the Master appointed a receiver, who executed a bond as required; all which were regularly approved.

It appears from the record, that the plaintiffs in error were tenants in possession of a valuable portion of the property mortgaged, under a lease, or a contract for a lease, made by Mr. H. on the 10th October, 1838; that the Court of Chancery at the term holden in November, 1841, ordered that the tenants of the mortgaged estate do immediately attorn to the receiver, and pay to him the rents in arrear since the time appointed by the decretal order of the preceding term, and the rents which may become due in future. *Further*, that the receiver have full power to institute proceedings in his own name for the recovery of the rents, &c. A copy of this order was served on the plaintiffs in error, and notice given them to show cause why an attachment should not issue against them for disobedience to its requirement.

Mansony and Hurtell appeared and showed cause against the motion, on oath. They admitted, that under the impression that Mrs. H., as executrix of her husband's will, was authorized to receive the rents, they executed a mortgage to her on property, to secure the payment of the rent on their lease; afterwards, on the 10th February, 1840, they admitted in writing that they were the tenants of Messrs. Cowperthwaite, Dunlap and Cope, and undertook to pay them the rent as it might fall due, when, by an application of the rents or otherwise, a debt for which they were pledged should be paid.

Afterwards, about the 30th October, 1840, Isaac H. Erwin, was appointed administrator *cum testamento annexo,* in con-

sequence of the refusal of Mrs. H. to execute bond, &c., and gave notice to the plaintiffs in error, to pay the rent to no one but himself; thereupon they gave notice to Messrs. Cowperthwaite and others of what had occurred, and asked to be indemnified against the demand of the administrator, but this was refused; and they refused to pay Messrs. C. &c. the rent.

After this had occurred, Jas. Erwin demanded of them the possession of the property which the plaintiffs in errror held, claiming under a purchase made at a sale by the sheriff of Mobile, under an execution issued on a judgment of the Circuit Court of that county. which had been affirmed by the Supreme Court of the State, in which Wm. McGehee, use, &c., was plaintiff, and Henry Hitchcock defendant. The original and affirmed judgments were rendered before the lease was made to Messrs. Mansony &c.; the first, previous to the date of the mortgage to Messrs. Cowperthwaite, &c. The plaintiffs in error declined recognizing the title of J. E., and he brought an action for the recovery of the possession and damages in the Circuit Court of the United States, sitting at Mobile; which is still pending and undecided. Under the impression that they had acted unadvisedly in recognizing the right of Messrs. Cowperthwaite, &c. to receive the rents, and that the title of J. E. was the best, the plaintiffs in error did, in April, 1841, recognize him as their landlord, surrendered to him their lease, and accepted a new lease, reserving to him rent for a term yet unexpired; ever since which time they have held under J. E. and not otherwise.

Messrs. Mansony, &c. aver that neither Messrs. Cowperthwaite, &c. or the assignees of the Bank of the United States, have ever been in possession of the premises in question, and that the possession of the latter is entirely adverse to the pretensions of J. E. under whom they claim. *Further*, they alledge that the stipulations of the contract between Mr. H. and the plaintiffs in error, were never performed by the former, though they retained the pcssession; but their losses in consequence of the failure of the testator or his representative has been adjusted and allowed them by I. H. E. as administrator, &c.

It is also stated that Messrs. Cowperthwaite, &c. or the assignees of the Bank, appeared in the Circuit Court of the Uni-

ted States, and asked to be permitted to defend as landlords of the plaintiffs in error, but after full argument the presiding Judge from interest or bias declined a decision of the question.

The allegations of the complainants in favor of the motion were fully sustained by affidavits or documentary proof.

In respect to the judgment in favor of McGehee, it appears to have been rendered both in the Circuit and Supreme Court, during the lifetime of Mr. H. After the judgment of affirmance, and in the year 1838, an execution was issued against the goods and chattels, &c. of the defendant therein, which was arrested by an injunction awarded at his instance. This injunction was continuing, and in full force at the time of Mr. H's death, and was not dissolved until the spring of 1840, when an execution again issued in July thereafter, and was satisfied by a sale of the property in question, by the sheriff according to law, to J. E.

In compliance with the motion of the complainants, the Court ordered an attachment to issue, unless Messrs. Mansony, &c. attorn to the receiver within two weeks. From this order Messrs. Mansony, &c. prayed an appeal, which was granted on condition that they execute a bond, &c.; but the condition was not complied with ; and having sued a writ of error, they now seek a revision of the order.

STEWART & DARGAN for the plaintiffs in error. An appeal and a writ of error are equivalent remedies in chancery cases. [Aik. Dig. 237, §4, 255, §10.] Here the decretal order is final, and unless it can be revised, great injustice must be done either to the plaintiffs, or their landlord, Mr. Erwin. [1 Paige's Rep. 511; 6 Eng. Cond. Ch. Rep. 365; 2 Wend. Rep. 225-239; 9 Johns. Rep. 443; Harper's Eq. Rep. 67; 4 Paige's Rep. 378; id. 450; 16 Wend. Rep. 405; 2 J. J. Marsh. Rep. 72.] A person not a party to the original cause, whose rights are affected, may appeal. [2 Smith's Ch. Pr. 40.]

A tenant may show that his landlord's title has expired or determined since the lease was made. [3 Ohio Rep. 57; 2 Wend. Rep. 507; 6 id. 666; 22 id. 121; 3 M. & S. Rep. 516; 6 Law. Lib. 521.]

An attornment may be controverted if obtained without

right. [13 Johns. Rep. 537; 7 Wend. Rep. 401; 1 Rawle's Rep. 408; 6 Binney Rep. 47; 14 Serg. & R. Rep. 385.]

Where a tenant has not obtained possession directly from the plaintiff, but from another, although he may have admitted the plaintiff's title, yet he may disclaim and show title in himself or another. [2 Johns. Cases, 353; 7 Wend. Rep. 401; 12 id. 105; 1 B. & P. Rep. 326; 6 Taunt. Rep. 202; 1 Bing. Rep. 38-360; 3 id. 474.] And though he has received possession from the landlord, he may show that the landlord's title has been extinguished, or is determined. [Cro. Eliz. 398; 6 Law Lib. 521; 2 Starkie's Ev. 230; 20 Johns. Rep. 60; 22 Wend. Rep. 670; 22 id. 121.]

A disclaimer by the tenant, determines the relation of landlord and tenant, and the landlord may at once bring ejectment without waiting for the expiration of the term and without giving notice to quit. [Runn. on Eject. 92; 2 Johns. Rep. 272; 6 id. 337; 5 Cow. Rep. 123; 6 id. 617; 3 Wend. Rep. 337.]

The relation of landlord and tenant, will not continue between the assignees of the mortgagees and the tenant of the mortgagor. [6 Wend. Rep. 666.]

The defendant in an execution and those claiming under him, cannot controvert a deed made by the sheriff for property sold under its authority. [3 Caine's Rep. 188, 10 Johns. Rep.]

The sheriff's deed relates back to the judgment, and avoids all intermediate acts of the defendant in execution and those claiming under him. [22 Wend. Rep. 121; 2 id. 507; 3 Cow. Rep. 75; 15 Johns. Rep. 309.]

The sale under McGehee's execution, after the death of Mr. Hitchcock, was good, and the title passed to the purchaser. [4 Watts' Rep. 367; 5 How. Rep. 253; 13 Peters' Rep. 15-16; 13 Johns. Rep. per Chancellor, 549. See also Collingsworth v. Horne, 4 Stewt. & P. Rep.; and Preston v. Surgoin, Peck's Rep.

An injunction does not destroy, it merely suspends the lien of the judgment. [1 Martin & Yerg. Rep. 373; 4 How. Rep. 178; 10 Leigh's Rep. 394; 3 Ala. Rep. 109.]

The receiver's remedy to obtain possession, except as to defendants and tenants who admit their tenancy, is by action. [Smith's Ch. Pr.; Jeremy's Eq. Juris.]

After a receiver has obtained the possession, the Court will

protect it; and those wishing to bring a suit to recover the possession, must apply to the Court for leave. [Smith's Ch. Pr.]

The Court respects the rights of third persons, and will dispossess no one unnecessarily; nor will this be permitted by means of a receiver. In the present case, the tenants have violated no duty in attorning to Erwin; and as Erwin is not made a party, the Court cannot determine to whom the rent should be paid; nor could a receiver be appointed with powers so as to affect them, as they have had no opportunity to answer. [7 Paige's Rep.; 1 Coxe's Ch. Rep. 422; 2 id. 383; 1 Paige's Rep. 17; 2 id. 450; 1 Ball & B. Rep. 75; 2 Russell's Rep. 149.]

The devise to Mrs. Hitchcock did not confer on her, by force of the will, an absolute estate in the realty of the testator; it was connected with the execution of the will; and as she declined assuming the office of executrix, nothing vested in her; and consequently nothing passed by her deed to Messrs. Cowperthwaite, &c. [21 Wend. Rep. 430; 25 id. 224; 7 Dana. Rep. 7; 1 Ohio Rep. 104; 4 Mass. Rep. 634; 4 Johns. Ch. Rep.; 2 Porter's Rep. 23; 3 id. 221; 5 id. 101-2-145; 8 id. · 380; Minor's Rep. 206; 3 Stewt. Rep. 489; Aik. Dig. 183-450; 5 Louisiana Rep. 429.]

An order appointing a receiver, does not create a *lis pendens* as to any particular property. [1 Wend. Rep. 618.]

CAMPBELL & GIBBONS, for the defendants. The order of the Chancellor, which is complained of, is not final: it settles no rights; but is intended merely for the security of the property and fund in controversy, and relates to a matter resting in the discretion of the Court; it cannot, therefore, be revised on error. [8 Wend. Rep. 219; 16 id. 369; 9 Peter's Rep. 1]

There can be no doubt of the propriety of the order, if Messrs. Mansony, &c. were the tenants of the agents of the Bank, and that they occupied that relation is believed to be undoubted. [1 Smith's Ch. Prac. 636; 11 Eng. Cond. Ch. Rep. 248; 1 Hoffm. Pr. 443; 2 Paige's Rep. 103.]

The attornment to James Erwin is a fraud upon those who claim under Mrs. Hitchcock by contract, and would, if tolerated, permit the mere volition of the tenants materially to affect

the rights of such persons. [5 Peters. Rep. 402; 29 English Com. Law Rep. 16; 4 M. & S. Rep 347; 6 Wend. Rep. 232; 2 Binn. Rep. 468; 4 Sergt. & R. Rep. 467; 3 Dev. & Battle Rep. 40; 4 id. 300; 5 Watts' Rep. 386; 5 Dana's Rep. 60; 6 Wend. Rep. 666; 22 id. 121.]

James Erwin purchased under an execution issued more than eight months after Mr. Hitchcock's death, on a judgment which was enjoined upon Mr. H's. application, and which continued suspended in its operation, until a short time before the execution issued. By the death of the defendant, his property vested in other persons as his representatives, and in order to subject it to seizure and sale, they should be notified by legal process, that they may show cause against the issuance of an execution. [2 Saunders' Rep 78; 2 Paige's Rep. 365; 10 Wend. Rep. 207; 4 Stewt. & P. Rep 238; 6 Porter's Rep.]

In England an execution bears test from its issuance, and though the defendant dies between the time of the test and actual issuance, his executor will not be allowed to show the fact so as to defeat the execution. [Bragner v. Longmead, 7 T. Rep. 20 ] The case cited from 5 Watts' Rep merely shows that this principle of the common law was acknowledgd in Pennsylvania, where an execution against lands was tested in defendant's lifetime. This rule, as applied in that State, is well explained in Peters' C. C. Rep. 269. But in this and the most of the States of the Union, the fiction which supposes an execution to become operative from its test, has been abolished. [Fryer v. Dennis, 3 Ala. Rep.; 1 Cow. Rep. 711; 10 Wend. Rep. 206; 9 id. 452; Taylor's Rep. 262; 1 Dev. & B. Rep. 561-356; 1 Yerger. Rep. 41; 10 id. 329; 2 Ohio Rep. 211-287; 2 Bibb. Rep. 19^; 4 J. J. Marsh. Rep. 280; 3 G. & Johns. Rep. 359; 6 id. 321; 16 Mass. Rep. 191.]

A judgment only operates as a lien upon lands so long as it may be enforced by execution, and if its vitality be suspended, the lien is lost, to commence anew, only from the time when life shall be again restored to it. [1 Ala. Rep. 373; 4 Stewt. & Porter's, 269-280; 3 Porter's Rep. 138-145-153; 3 Munf. Rep. 417; 2 Brockb. Rep. 252; 4 Peter's Rep. 124; 13 Peter. Rep.] The effect of an injunction is to inhibit the issuance of an execution; the plaintiff acquires a new security in the bond, for the satisfaction of his judgment; and on this, if successful

in dissolving the injunction he is entitled to execution. Although McGehee's judgment at one time was a lien upon the real property of Mr. H. of which he was the *legal owner*, yet the injunction, by suspending its operation, destroyed that lien; and before its dissolution Mrs. H. becoming a trustee under the will of her husband, with powers beyond and independent of the office of executor, conveyed the entire mortgaged property to Messrs. Cowperthwaite, &c.; and thus prevented the lien from reattaching.

It has been decided in the cases last cited from our own reports, that an injunction regularly issued, upon the execution of a bond with surety, releases the defendant's property from any lien which may have attached in virtue of the execution; and if the lien of the judgment is dependent upon the right to enforce its collection, the same consequence must follow in respect to the judgment. These decisions have settled a rule of property in which the profession have acquiesced, and which cannot be now departed from, without unsettling valuable interests. It is needless to add argument to this point, or it could be shown that the injunction in this State operates not less against the judgment than the party against whom it is sued out. The case in 8 Yerger, 452, it is believed, is adapted to statutes and a practice materially different from our own.

COLLIER, C. J.—We do not consider it necessary to a decision of this cause to examine all the interesting questions discussed at the bar; and shall content ourselves with inquiring, 1. Did not the mortgage by Mr. Hitchcock and wife, executed in 1838, and the failure of the former to pay the debt, (intended to be secured,) as stipulated, entitle the mortgagees to recover of the plaintiffs in error, as his tenants, the rent becoming due after the forfeiture of the mortgage? 2. Was the execution issued on the judgment in favor of McGehee, use, &c., so far void, that a levy on and sale of property thereunder, would not invest the purchaser with a title? 3. Is the order of the Chancellor directing an attachment to issue against Messrs. Mansony and Hurtell, such a sentence or decree as may be revised on error?

1. Where a mortgage is drawn in usual form, without any stipulation, expressed or implied, as to the possession, or the

94

rents accruing previous to the forfeiture, the legal estate vests immediately in the mortgagee, who may maintain an ejectment against the mortgagor. But if it is provided by the mortgage, that the mortgagor shall retain the possession until default is made in the payment of the debt, or interest, then the mortgagee cannot sue at law until after forfeiture is incurred. [See Doe ex dem Duval's heirs v. McLoskey, 1 Ala. Rep. N. S. 729, and cases there cited; also, 1 Lomax Dig. 327.] In the case cited, the Court say, "The creditor who takes a mortgage to secure a debt by bond or otherwise, has three remedies, either of which he is at liberty to pursue, and all of which it is said, he may pursue, until his debt is satisfied. He may bring an action at law on the bond; or he may put himself in possession of the rents and profits of the land mortgaged by means of an ejectment or trespass to try titles; or he may foreclose the equity of redemption, and sell the land to satisfy the debt." Again; "the general current of authority maintains the right of the mortgagee to enter at any time upon the land mortgaged, or bring an action for the recovery of the possession, unless it appears by express stipulation, or necessary implication, that the parties understood that the mortgagor should remain in possession." In the present case it is entirely immaterial what were the stipulations of the mortgage, in respect to the possession of the mortgaged premises previous to the motgagor's default; for it is shown by the record, that the mortgagor failed to pay the first instalment of the debt, and that a bill for a foreclosure was filed previous to his death. The inference from these facts is, that the legal title had vested in the mortgagee, and it was competent for him to have sued at law for the recovery of the possession. [Keech v. Hall, Doug. Rep. 21.]

The statute of 4 Anne Ch. 16, having dispensed with the attornment of tenants to the grantees of rents and reversions, it has been held in England that the mortgagee of land, which at the time of mortgage, was under a demise to a tenant, may in case of non-payment of the interest, give notice of the mortgage to the tenant in possession, and recover the rent in arrear at the time of the notice, as well as what afterwards accrues, [1 Lomax's Dig. 330; see also Chambers et al v. Mauldin et al, at the last term, and cases there cited. Moss v. Gallimore,

Doug Rep. 266, is a leading case to this point.   There it ap-
pears that one Harrison being seized in fee of certain premises,
on the 1st of January 1772, demised them to the plaintiff for
twenty years, at a rent of £40, payable yearly on the 12th of
May; and in May of that year, he mortgaged the same prem-
ises to the defendant, Mrs. Gallimore in fee.   The plaintiff
continued in possession, and paid the rent regularly to the
mortgagor, with the exception of £28, which was due on or
before November, 1778, when the latter became a bankrupt,
being then indebted to the mortgagee more than that sum, for
interest on the mortgage.   On the third of January, 1779, the
agent of the mortgagee showed the plaintiff the mortgage, and
demanded the rent then remaining unpaid.   To this demand
the plaintiff replied that the assignees of the mortgagor had
demanded the rent on the 31st December preceding; but the
agent saying that the mortgagee would distrain if the rent was
not paid, the tenant said he had some cattle to sell, and hoped
she would not distrain till they were sold, when he would pay
it.   The plaintiff not having paid according to his contract, the
other defendant, by order of Mrs. Gallimore, entered and dis-
trained for the rent, and gave a written notice of the distress to
the plaintiff.   The cattle and goods distrained were according-
ly sold; and the question was, whether, under all the circum-
stances, the distress could be justified.   It was insisted for the
plaintiff that the defendant Gallimore, not being, at the time
when the rent distrained for became due, in the actual seizin
of the premises, nor in the receipt of the rents and profits, she
had no right to distrain.   *Lord Mansfield* said, "Of late years
the Courts have gone so far as to permit the mortgagee to pro-
ceed by ejectment. if he has given notice to the tenant that he
does not intend to disturb his possession, but only requires the
rent to be paid to him, and not the mortgagor.   This however
is entangled with difficulties.   The question here is, whether
the mortgagee was or was not entitled to the rent in arrear.
Before the statute of Queen *Anne*, attornment was necessary,
on the principle of notice to the tenant; but when it took place
it certainly had relation back to the grant, and like other rela-
tive acts they were to be taken together.   Since the statute the
conveyance is complete without attornment, but there is a pro-
vision that the tenant shall not be prejudiced for any act done

by him, as holding under the grantor, till he has had notice of the deed. Therefore the payment of rent before such notice is good. With this protection he is to be considered by force of the statute, as having attorned at the time of the execution of the grant; and here the tenant has suffered no injury. No rent has been demanded which was paid before he knew of the mortgage. He had the rent in question still in his hands, and was bound to pay it according to the legal title." Again: " The mortgagor receives the rent by a tacit agreement with the mortgagee, but the mortgagee may put an end to this agreement when he pleases. He has the legal title to the rent, and the tenant in the present case cannot be damnified, for the mortgagor can never oblige him to pay over again, the rent which has been levied by this distress. I therefore think the distress well justified; and I consider this remedy as a proper additional advantage to mortgagees, to prevent collusion between the tenant and the mortgagor." The opinions of the entire bench were in harmony with these views. [See also, Doe ex dem Marriott v. Edwards, 5 B. and Adol. Rep. 1065; Pope v. Biggs, 9 B. and C, Rep. 245; Waddilove v. Barnett, 4 Dowl. P, Rep. 348; Vallance v. Savage, 7 Bingh. Rep. 595; in which it is considered as perfectly clear and settled, that a mortgage operates as a transfer in law of all leases of the mortgaged premises, which the mortgagor has made; and that the mortgagee, upon giving notice to the tenants may recover rent. In fact these cases maintain, that where a mortgagor continuing in possession, demises the premises for a term of years, the mortgagee may treat the mortgagor as his agent in making the lease, and demand of the lessee the rent unpaid, upon giving him notice of the mortgage.

The law in this State is precisely the same as it is in England, so far as it respects the right of the mortgagee to recover rent of the tenants of the mortgagor. We have a statute which modifies the common law to the same extent as does that of 4 Anne. It is in these words: " Every grant or conveyance of messuages, lands, tenements, and hereditaments, shall be good and effectual without attornment of the tenant; but no tenant who before notice of such grant or conveyance, shall have paid the rent to the grantor, shall be prejudiced, or suffer any damage by such payment." [Aik. Dig. 93.]

In the present case, however, it appears that the plaintiffs in error admitted in writing that they were the tenants of the mortgagees, (Messrs. Cowperthwaite, &c.) and undertook to pay them rent, when by an application of the rents, or otherwise, a debt for which they were pledged was satisfied. It is true that they subsequently acknowledged the title of James Erwin, surrendered to him their lease and accepted from him another, by which they agreed to pay him rent. There is nothing in the record to show that in all this the plaintiffs in error have not acted with entire good faith; merely acknowledging the title of the one party or the other as they thought it best, without any advantage to themselves. And even if the complainants have acquired no title in virtue of the deeds executed by Mrs. Hitchcock and James Erwin, yet the mortgage it must be conceded is *prima facie* valid; and from the showing made, authorized the appointment of a receiver of the rents of the property in question, until it should be ascertained by the Court, who had the paramount right to them. This was a step important to the complainants if it should appear that their title is superior to the defendants'; otherwise, after having obtained the decree they seek, they might be compelled, in order to recover the rent, to prosecute another suit against James E.

The appointment of a receiver being regular, it was clearly competent for the Court, to direct the tenants to pay the rent to him, and if they refused to attorn, to follow up that order by the issuance of such compulsory process as was necessary to make it effectual. The order for an attachment against the plaintiffs in error would have effected nothing more; and was consequently proper.

2. A judgment in this State is a lien upon the lands of the debtor within the same, in virtue of the statute which authorizes their extension under the writ of *elegit*. [Morris v. Ellis, 3 Ala. Rep. 560; Campbell, use, &c. v. Spence et al, at this term; see also Winston & Fenwick v. Rives, 4 Stew. and P. Rep. 280; Pope v. Brandon et al, 2 Stew. Rep. 401; Ridgely's Ex'rs v. Gartrel, 3 H. and McH. Rep. 449; Calhoun v. Snyder, 6 Binn. Rep. 135; Stow v. Tifft, 15 Johns. Rep. 464; Roads v. Symm et al, 1 Ohio Rep. 281; Bank U. S. v. Tyler, 4 Pet. Rep. 366; United States v. Morrison, id. 124; Rankin v. Scott, 12 Wheat. Rep. 177; Woodcock v. Bennet, 1 Cow.

Rep. 711; Bank U. S. v. Winston's Ex'rs. et al, 2 Brockb. Rep. 252; Stymets v. Brooks, 10 Wend. Rep. 211-12 ] But the plaintiff, in order to make his lien available is not obliged to extend the lands of the defendant; if he chooses he may have them levied on and sold under a *fieri facias.* [Morris v. Ellis *ut supra.*]

Assuming in the present case, that Mr. Hitchcock's title to the property in question, was such as the judgment recovered by McGehee could reach, the question is, has its lien been defeated or delayed by any subsequent act or occurrence ? It has been repeatedly decided by this Court, that where a defendant sues out a writ of error, and supersedes the execution by entering into bond with surety, or obtains an injunction, the lien of the execution is entirely destroyed. [Barnes v. Baker & Sledge, Minor's Rep. 373; McRae and Augustin v. McLean, use, &c. 3 Porter's Rep. 145, 153; Wiswall v. Monroe, at the last term; Campbell, use, &c. v. Spence et al, at this term.] And in Winston and Fenwick v. Rives, [4 Stew. and P. 280,] the Court say they think it clear, that the lien of a *fi fa.* on personal property, or of a judgment on lands, is discharged by a bond for a writ of error, or by an injunction.

In the Bank of the United States v. Winston's Ex'rs. et al. [2 Brockb. Rep. 252,] Chief Justice Marshall says, "As the lien created by a judgment is given by the statute which authorizes an *elegit,* it is settled in this country that the lien depends upon the right to sue out an *elegit.*" [See also 2 Call's Rep. 125; 4 H. & Munf. Rep. 57.] Again: continues the learned Judge, " In the case of Scriba v. Deanes, ante. vol. 1, page 170, this Court determined that the lien of a judgment on which execution is stayed, dates not from the time of its rendition, but from the time when execution may be sued out. I have not changed this opinion." To the same effect are the cases of Jackson v. Bartlett, 13 Johns. Rep. 533; Conrad v. The Atlantic Insurance Company, 1 Peter's Rep. 443; United States v. Morrison, 4 Peter's Rep. 124; Burton v. Smith et al. 13 Peter's Rep.— And this Court in Campbell use &c. v. Spence et al. *ut supra;* determine that a *bona fide* purchaser, under a *fieri facias* upon a junior judgment, would be protected. In the language of the Court, in the case of Den v. Hill, [1 Haywood, 72,] " were the law not so, it would be the most dangerous thing in the world

to purchase land at an execution sale. Dormant judgments might be revived a long time afterwards, and the innocent vendee evicted without the possibility of ever regaining the purchase money." In such case, the lien of the elder judgment would be lost by the laches of the plaintiff."

By the common law, all proceedings in a suit at law are stopped by the death of one of the parties. If either die before judgment, no judgment can be entered: if after judgment, no execution can issue. To avoid the inconvenience resulting from this principle, the judgment is made to relate back to a day previous to its rendition, or the execution to bear teste of the term when the judgment is supposed to have been rendered. [Hildreth v. Thompson, 16 Mass. Rep. 192; Stymets v. Brooks, 10 Wend. Rep. 211-12.] In the latter case, it is said, "After the death of a defendant, no execution can issue against his personal representatives, heirs, or terre-tenants, without a *scire facias*. [2 Saund. Rep. 6, n. 1, 72, a. Bacon tit. Execution 731, pl. 14 note; 2 Tidd, 1029; 2 Arch. prac. 88.] The reasons given are, that a new party is affected by the execution, and there would be a discrepancy between it and the record, and indeed there is no authority for the process. A *scire facias*, therefore, is necessary not only to make these new parties parties to the record, but to give them a day in Court to shew cause, if any, against the application of the property to the discharge of the judgment." It is further maintained by the Court, that the English doctrine of the relation of an execution to the day of its teste, so as to operate a lien upon the goods of the defendant from that time, is applicable alone to the writ of *fieri facias* which issued against the goods and chattels of the defendant. [See also 2 Saund. Rep. 6, n. 1; 2 Lord Raym. Rep. 849; 1 Archb. Prac. 282; 2 id. 88; 2 Tidd. Prac. 915; 1 Saund. Rep. 219, e. f.]

In respect to the relation of a judgment to the first day of the term, when it was rendered, this Court decided that it was a mere legal fiction, which would never be allowed to defeat the purposes of justice; and that a judgment became a lien upon the defendants lands from the time of its rendition, and not sooner. [Pope v. Brandon et al., 2 Stewt. Rep. 408.]

It has been expressly adjudged, that an execution which directs money to be made of the lands and tenements of a defen-

dant who is dead, is irregular and void [Woodcock v. Bennet, 1 Cow. Rep. 740; Stymets v. Brooks, 10 Wend. Rep. 212; Morton v. terre-tenants of Croghan, 20 Johns. Rep. 106.] The mandate of such a writ cannot be executed; for the reason, that by the death of the defendant previous to its issuance, all the real estate of which he was possessed ceased to be his, and *eo instanti* vested in his heirs, who cannot be divested of it without an opportunity of being heard. Being void, the execution is regarded (it is said) as a nullity from the beginning, so that a purchaser under it acquires no title as against heirs or devisees. [1 Cow. Rep. 734-5-6.] And its invalidity may be shown to the Court by extrinsic proof.

In Collingsworth v. Horn, [4 Stewt. & P. Rep. 237,] it was considered, that the issuance of an original *fieri facias* against the property of a defendant, after his death, might be irregular, but where an original issued in his lifetime, an *alias* or *pluries* issued thereafter would not be void, and might be sustained as a continuation of the first execution, and to keep alive the lien which it created upon the personalty. [See also Doe ex dem. Price v. Lucas at this term.] But it has been held that there is a distinction between the real and personal estate in this respect That it is the judgment, not the execution, which gives the lien upon the former; and while the execution is permitted to continue as to the personalty, the judgment does not survive as to the realty. [1 Cow. Rep. 740 1.]

We have very cautiously stated the law on this point, as we find it laid down in the book. Our conclusion upon the first question considered, relieves us from the necessity of making any definitive decision of the second, although it has been elaborately discussed at the bar. Our impression is very strong, that the lien of McGehee's judgment was suspended by the injunction obtained by Mr. Hitchcock and continued after his death; and the execution subsequently issued was irregular, and did not authorize the levy on, and sale of the lands of which he died possessed. In fact, the first branch of this proposition may be regarded as settled by our own decisions; the latter, as it may perhaps be desirable, we are willing to leave open to be again examined when it shall arise.

3. The order for an attachment against the plaintiffs in error, is not a final decree in the cause, but is intended to provide for

the security of the rents of a portion of the property in controversy, until it shall be determined whether the complaii ants are entitled to them.   In this view of the question, and w hich seems to us to be strictly correct, we think it clear, that a writ of error will not lie upon the order of the Chancellor. either at common law or under our statutes.   In Creighton et al. v. The Planters and Merchants Bank, [3 Ala. Rep. 156,] it is true, the Court say, " By our staute, appeals and writs of error appear to be considered as equivalent remedies, and we think we shall most effectually carry out their intention by allowing the writ in this instance."   In that case the order was final, and the question was, whether it should not be revised by appeal, instead of a writ of error.   The generality of the remark must be restricted to the case before the Court, and thus considered is correct; for the statute gives either an appeal or writ of error upon such a definitive sentence, [Kennedy's heirs and ex'rs. v. Kennedy's heirs, 3 Ala. Rep. 434,] would seem to lead to the conclusion, that an interlocutory order, which is the subject of revision, should be removed to the higher Court by appeal.   Without undertaking to inquire whether the order in the present case, is of that character, we are satisfied that the writ of error cannot be sustained, and accordingly direct that it be dismissed.