JONES, Adm'r. v. SWIFT.

1. An agreement between the distributees of an estate, to divide the property, and hold it subject to the debts of the deceased, gives to each of the distributees a *lien* upon the share of the other, for the payment of the debts

contemplated; but will not subject the property so divided, in the hands of one of the distributees, to sale under a judgment obtained upon a note executed jointly by all the distributees, to a creditor of the estate for a debt due by the deceased. Whether the creditors of the deceased might not have availed themselves of this agreement in equity, or whether the distributees might not have been sued as executors *de son tort—quere.*

2. An execution cannot be issued against the estate of a deceased debtor, unless one has previously issued on the same judgment in his life time, and the fact that there is a plurality of defendants in the judgment, will not change the rule in respect to one who is dead.

Writ of Error to the Circuit Court of Dallas.

THIS was an action of detinue, to recover a female slave, named Rachel. The cause was tried by a jury, who returned a verdict in favor of the defendant, and judgment was rendered accordingly. From a bill of exceptions sealed at the plaintiff's instance, it appears that the slave in question was once the property of Ambrose Gibson, deceased; after his death, it was agreed between the plaintiff's intestate and William and Ira Taylor, who were the only distributees of the estate of Ambrose, that the estate should be divided between them, and they would hold the same subject to the debts of the deceased, as well those for which the distributees had made their joint notes as for other demands. The slave in question was allotted to the intestate, who took her into possession. Afterwards, judgments were rendered by a justice of the peace on notes given by the distributees jointly for a debt of Ambrose, the deceased; but no executions issued until after the death of the plaintiff's intestate. Executions were then issued, and levied on the slave Rachel by the direction of W. Taylor, and while she was in his possession, a public sale of her made, at which the defendant became the purchaser. There was no administration on the estate of Mrs. Gibson, until after the defendant's purchase—all the property of Wm. Taylor having been previously disposed of in the payment of the debts of A. Gibson and himself.

The plaintiff's counsel prayed the court to charge the jury, that if the distributees agreed among themselves, or with the

19

plaintiff in the executions under which Rachel was sold, that the property as divided should be liable to the old debts of A. Gibson, deceased—there being no lien on the estate at the death of the plaintiff's intestate, then the levy and sale which had been shown by the evidence, passed no title to the defendant, in the slave in question. *Further,* if the plaintiff in execution had any claim on the slave in question, if there was no lien at the time of Mrs. Gibson's death, it could only be enforced in a court of equity. These charges were severally denied, and the jury instructed, that if the facts to which the witnesses testified were true, the plaintiff could not recover. To the refusal to charge, and the charge given, the plaintiff excepted.

J. A. LODOR, for the plaintiff in error, insisted, that each of the charges asked should have been given, and that the charge given was erroneous. He cited Clay's Dig. 209, § 42; 12 Mass. Rep. 309; 9 Wend. Rep. 302; 2 Brev. Rep. 307; 4 Stew. & P. Rep. 237; 3 Ala. Rep. 254; 4 Id. 667; 7 Id. 660; 9 Id. 908.]

W. M. LAPSLEY, for the defendant in error, insisted, that the agreement between the distributees authorized the sale of the slave in question, though Mrs. Gibson died previous to the execution being issued. There could be no necessity for forcing the judgment creditor, or W. Taylor, to go into equity.

COLLIER, C. J.—The judgment under which the slave in question was sold, is not against the plaintiff's intestate and her co-distributees as the legal representatives or executors in their own wrong, of the estate of Ambrose Gibson, deceased. True, the debt for which it was rendered was due by the latter, and may have been a charge upon his executors or administrators, to be satisfied from the estate. But the distributees gave their individual note as a substitute for the original demand, and on the note thus substituted, the recovery was had. The case then, in a court of law, stands in the same predicament as if the judgment had been rendered on a note to the consideration of which A. Gibson, de-

ceased, was a stranger, and with which his estate had no connection.

In respect to the agreement between the distributees, to divide that estate, to pay an equal proportion of its debts, and to hold the property thus distributed subject to their payment, we cannot think it can legalize the execution against the intestate's estate. That was an agreement to which the plaintiff in execution was no party, and of which he could only have availed himself in a court of equity. Notwithstanding the agreement between the distributees, they might perhaps have been charged. by a creditor of the deceased, upon the ground of their possession, as executors in their own wrong. But we have seen that the plaintiff in the judgment before us, did not thus proceed, but sued upon a personal liability of the distributees, the evidence of which originated after the death of A. Gibson.

It is perfectly well settled, that an execution cannot be issued against the estate of a deceased debtor, where one had not previously issued in his lifetime, on the same judgment, that no lien attaches in virtue of such an execution upon the personal estate of the deceased debtor in the hands of his administrator, and that the levy made under its mandate, will not prevail against the claim of the administrator. See cases cited by the plaintiff in error, and 4 Ala. Rep. 735. The fact that there is a plurality of defendants in the judgment, will not render a different rule applicable in respect to one who is dead. The death might be suggested, and execution issue against the survivors. [9 Ala. R. 335.]

The bill of exceptions states, that W. A. Taylor had purchased of A, Gibson all his property, and given to the latter his notes in payment—after the death of the vendor, the vendee proposed to his co-distributees to surrender the property thus purchased by him, and allow it to be divided as the property of the estate of the deceased, if they would agree that it " should be still held liable and subject to the debts of the deceased," and also to the debts of the estate assumed by the individual notes of the distributees, notwitstanding the distribution. This proposition was assented to, and the property given up. This decision was effectual to invest the several distributees with the shares respectively allotted to

them, as between themselves and all other persons not having demands against the estate. The distributees, as we have seen, might perhaps have been chargeable as executors *de son tort*, upon the ground, that by the delivery of the notes of W. A. Taylor to him, and his renunciation of his purchase, the property, at the election of a creditor, might be treated as assets of the estate. But upon this point, as it is unnecessary, we express no opinion.

The agreement certainly gave to each one of the distributees a lien upon the share of the other for the payment of the debts contemplated. But it was not competent for either of them, without some legal warrant to take the part distributed to the other, and dispose of it for that purpose; and if he did not possess such authority, it is difficult to perceive upon what principle he could impart it to a sheriff, or other officer. The *fieri facias* under which the sale was made was, as we have seen, a mere nullity, as it respects the plaintiff's intestate, and was consequently ineffectual to pass her interest.

Mrs. Gibson's title to the portion of the estate allotted her, was independent of the control of W. A. Tayler, except for the purpose provided by the agreement. This did not authorize him, or an officer under void process, to take possession of, and sell it, although the proceeds were appropriated in payment of debts with which it was chargeable. It was competent for the creditor to have subjected the property by a judgment and execution against Mrs. Gibson's personal representative—so W. A. Taylor, upon payment of the debt, might have prosecuted his remedy at law against him—and perhaps both of them had a remedy in equity. The fact that the property was sold by A. Gibson, and after his death, it was given up and distributed among those entitled to his estate, cannot, we think, vary the case. We need add nothing more, what has been said will sufficiently indicate that the circuit court incorrectly ruled the law. Its judgment is consequently reversed, and the cause remanded.