Davidson and Stringfellow v. Shipman, et als.

---

# DAVIDSON & STRINGFELLOW v. SHIPMAN, ET ALS.

1. A former judgment is a bar only in reference to the subject matter of the suit, and the points there put in issue and determined. When, therefore, it is proposed to show, by the record of a judgment, that a certain matter was decided, it must appear from the record that such matter was in issue, and then parol evidence is admissible to show, that the matter was, in fact, submitted to the jury. If the matter was not within the issue, such testimony is not admissible, as it would be, in effect, to contradict the record.

2. Upon the trial of the right of property, the issue being, that *the property levied on was, at the time of the levy, subject to the satisfaction of the execution*—it is not admissible to show, by parol, that the invalidity of the mortgage, under which the claimant deduced his title, was submitted to the jury.

3. Such an issue is an immaterial one, and no judgment should be rendered on the finding of the jury, but the court should award a re-pleader.

APPEAL from the Chancery Court of Tuskaloosa.

The bill was filed by the plaintiff in error, to foreclose a mortgage on slaves and other property, executed by Thomas Crawford on the 26th March, 1839, to secure them as his sureties upon two notes payable to the Branch Bank of Mobile, on the 1st of May, 1839 and 1840, amounting in the whole to $12,676 91. By the terms of the deed, the mortgagor was to remain in possession of the property until the mortgagees sustained loss or injury by reason of default of payment. That the mortgagor made default, and that on the 21st June, 1841, the plaintiffs in error paid the Bank $14,272 05, the amount due on the notes.

That in the mean time several persons had obtained judgments against Crawford, the mortgagor, individually, and as a member of a firm, and writs of *fieri facias* issued thereon, two of which in favor of Shipman, Crane & Co., being the judgments first obtained, were levied on the mortgaged property on the 17th February, 1841, and the residue on the 11th April, 1841.

To the property first levied on, the complainant Davidson, individually interposed a claim under the statute on the 17th Feb. 1841. That the trial of the right of property came on at the succeeding April term of the circuit court; that on the trial the court excluded the mortgage as evidence, on the ground, 1st, that but one of the mortgagees interposed a claim, and secondly, that the contingency upon which the mortgagees were entitled to the possession of the property, had not happened—and that the jury rendered a verdict subjecting the property to the payment of the executions.

To the property levied on under the remaining executions, the complainants jointly, on the 1st July, 1841, interposed a claim, which, at the succeeding term of the court, resulted in the condemnation of the property to satisfy the executions; that on the trial of the issue, the plaintiffs in execution objected to the admission of the mortgage in evidence, but the court permitted it to be read, and the plaintiffs excepted; that complainants are unable to say on what ground the jury decided, but that as the mortgagor was in possession at the time of the levy under the issue joined, no other decision could be made, as the statute prohibited them from dismissing or discontinuing their claim. That the entire mortgaged property is not sufficient to satisfy the executions, and the mortgagor is insolvent; that if the property is sold under the

executions, it may be carried abroad and dispersed, &c. The prayer was for an injunction, &c.

The defendants, by their answers, rely on the trials at law, upon which they insist the main question in issue before the jury was, whether the deed of mortgage was *bona fide*, or fraudulent and void.

A great amount of testimony was taken to prove what transpired at the trials, and among others, that of the Judge who tried the cause, who states that the main question on the trial before the jury was, as to the validity of the mortgage; that the plaintiff objected to its going to the jury on the ground, that on its face it was fraudulent and void as to creditors; but it was permitted to be read in evidence. That evidence was introduced on both sides, one party endeavoring to prove it fraudulent, and the other, that the deed and the whole transaction connected with it, was fair and *bona fide*. That he charged the jury, that the main question was, whether the mortgage was fair and *bona fide*, and supported by a good consideration, or whether it was fraudulent and intended to defeat creditors—that he stated the badges of frauds, &c. He does not recollect all the charges given.

One of the counsel for the plaintiffs states the same in substance as the Judge, as to what took place on the trial, and in addition, that no point or objection was made as to the frame of the issue.

One of the counsel for the claimant proved, that the Judge, in addition to charging on the question of fraud, told the jury that the possessory interest of Crawford, the mortgagor, was subject to sale under execution, and has no recollection that any testimony was offered to impeach the transaction as fraudulent. Another of their counsel testified, that the fact that the property was in possession of the mortgagor, was relied on by the plaintiff's counsel, and charged on by the court. Much other testimony was taken to prove what took place on the trial of the cause.

The mortgagors took possession of the slaves about the last of June, 1841. It also appears from the proof, that the complainants paid the debt, to secure them from which the mortgage was made.

The chancellor considering, that from the decisions of this court, the validity of the mortgage was involved in the issue sub-

mitted to the jury, that their finding was conclusive against the complainants, and dismissed the bill.

The dismissal of the bill is now assigned for error.

CRABB & COCHRAN, for plaintiffs in error, made the following points:

1. The only right in the mortgagor (defendant in execution) subject to levy and sale, was the possession of the mortgagor, which he legally had at the time; the right of the complainants being then a mere equity. [3 S. & P. 297; 5 ib. 192; 5 Porter, 182.] Such being the case, the verdict and judgment was a condemnation of the interest only of the defendants in execution, and did not affect the equity of plaintiffs in error. Such would be the law if the ordinary issue had been tried, but in this case, the issue was special, and confined the jury to the *time of the levy.*

2. The omission to set up an equitable defence in a suit at law, or an unsuccessful attempt where no defence can be made, will not preclude a party from relief in chancery. [1 W. C. C. R. 320; 3 Ala. 406; 2 Leigh, 474; 1 Dana, 99, 109; 3 Stewart, 9, 155; 1 S. & P. 135; 5 Porter, 547; 4 Litt. 159; 3 Dess. 323; 1 Car. Law R. 534; Cook's R. 36, id. 242.]

3. Or when defence at law is doubtful, and the jurisdiction of chancery undoubted. [17 Johns. 384; 3 Caines' C. 1; 10 Johnson, 587.]

4. At the time the claim was interposed, as the debt was not paid, the right was purely equitable.

5. A judgment of a court of concurrent jurisdiction is conclusive only as between the same parties and privies upon the same subject matter directly in question in another court; but not if it comes collaterally in question, or is incidentally cognizable, or only inferrable by argument from the judgment. [Duchess of Kingston's case, 20 State Trials, 538; 1 Starkie Ev. 190, 201, § 59, 65.] In this suit the object is different from that at law— the subject matter is different—the parties are different. The question of fraud was at most, a mere incidental or collateral question in the court; it was a matter of inference; but to be an estoppel, it must appear from the record to be the same. [4 Conn. 276; 10 Wend. 80; 3 East 346; 1 Esp. R. 43; 2 Johns. 24; 4 Day, 274, 431; 5 Conn. 127; Greenleaf's Ev. 572; 13 Wend. 419.]

6. To be an estoppel, it must be mutual, but if the plaintiffs in

execution had filed a bill to redeem, the judgment at law if against them, would not have precluded them from insisting on the fraud, if it existed.  [1 Pain's R. 525, Greenl. Ev. 563.]

7. As to the judgments in favor of Shipman, Crane & Co. there can be no pretence that the question of fraud has been tried.

8. Lastly, as creditors of Crawford individually, they are entitled in equity to satisfaction out of his estate in preference to the creditors of the firm of Crawford & Hines.  [1 Story's Eq. 627, 75; 17 Vesey, 205; 5 Cranch 34.]

PECK & CLARK, for defendants in error.—The finding by the jury on the trial of the right of property where the issue is general, is conclusive between the parties to it, as has been repeatedly held by this court, and is a condemnation of the property, absolutely, in discharge of the execution.  [5 Porter, 182; 6 ib. 447; 2 Ala. Rep. 314.]

As between these parties, the question is *res judicata*, not only as to those questions which were in point of fact adjudged by the court, but is alike decisive upon all points that were in issue and properly determinable.  [9 Porter, 351.]  In all cases where the claimant relies upon a deed as the foundation of his claim, the validity of the deed is necessarily put in issue, and must be adjudicated.

But upon these trials, except those upon the executions of Shipman, Crane & Co., the question of the validity of the mortgage deed, was in fact passed upon by the jury, under the charge of the court, as is shown by the testimony.  The question, therefore, argued by the opposite counsel, founded upon the language in which the issue is couched, has no application.  The *forum* in which to litigate their rights was selected by themselves—the issue was made up under the direction of the court, as the statute requires, without objection from them, and they were permitted under it to litigate the question of *fraud vel non*, and upon the best established principles of law, the judgment is binding on all courts of concurrent jurisdiction.

As to the cases of Shipman & Co. in which the deed, on the motion of the plaintiffs, was excluded from the jury, the plaintiff in error is in no better condition.  If the court erred in excluding the deed, the party complaining of it should have taken advantage of it on error; it cannot be redressed in chancery.  But the

plaintiff holds the affirmative of the issue, and must have proved that the property was liable to his execution, otherwise he could not have obtained judgment of condemnation.

If the defendants in error have, as is alleged, obtained an advantage over their adversaries, it was not unfairly obtained, nor was it the result of fraud, accident or mistake, in the legal sense of the term, and therefore a court of chancery has no power to deprive them of it.

ORMOND, J.—It is the settled law of this court, that the possessory interest of a mortgagor, or of the maker of a deed of trust, may be sold under execution, and by a purchase at such sale, the purchaser acquires such an interest only as the defendant in execution has in the property. In this there is no difficulty, as no one claiming title to, or an interest in the property, would be concluded thereby. But when a claim is improperly interposed, as by a mortgagee, when the law day has not arrived, many embarrassing questions arise—for as the plaintiff in execution has an undoubted right to attack the validity of the deed, or impeach it for fraud, it becomes difficult, if not impossible, to determine, after a verdict in favor of the plaintiff in execution, whether the entire property, or only the possessory interest of the defendant in execution, was condemned by the jury.

To avoid this difficulty, this court intimated, in Perkins & Elliott v. Mayfield, [5 Porter, 193,] "that the issue should always conform to the nature of the interest sought to be subjected, if an equity of redemption, it should be so expressed—and if there is no qualification, it must be supposed to be the entire interest which is proceeded against." This rule was found to be impracticable, and that there was no middle ground, but to proceed against the interest of the defendant in execution, whatever that was. Finally, in The Planters and Merchants Bank of Mobile v. Willis & Co. [5 Ala. 770,] it was held that the only proper issue was, that "the property levied on was subject to the execution." And in Williams & Battle v. Jones, [2 Ala. 319,] it was suggested that where the mortgagee or trustee could not interpose a claim in consequence of the right of the defendant in execution to the possession, that a court of chancery would interfere and ascertain the interest of the defendant in execution subject to sale.

The executions of Shipman, Crane & Co. were levied on the mortgaged property, whilst the defendant in execution, by the terms of the deed, was entitled to the possession of the property, and whilst that state of things continued, the mortgagees interposed a claim under the statute. At the trial, the court very properly excluded the mortgage, and the property was condemned to the satisfaction of the executions.

Various other judgments being obtained against the mortgagor, executions issued thereon against him, and with those of Shipman, Crane & Co. were on the 11th April, 1841, and whilst the mortgagor was entitled to the possession of the mortgaged property, levied thereon. About the 21st June, 1841, the mortgagees having paid the debt for which they were sureties, and to secure which the mortgaged deed was made, they subsequently, on the 1st July, 1841, interposed a claim for trial of the right of property.

The cases of Shipman, Crane & Co. were dismissed in consequence of the previous trial, and judgment in their favor. The other cases were tried upon an issue, that the property levied on by the execution, was at the time of the levy, to wit, on the 11th April, 1841, liable to the satisfaction of the plaintiff's execution. The jury under this issue found in favor of the plaintiff in execution, and condemned the slaves levied on to the payment of the debts, and the question to be determined is, whether the verdict and judgment is conclusive against the validity of the deed.

The general rule of the conclusiveness of judgments, is the one laid down by Chief Justice DeGrey, in the Duchess of Kingston's case. "That the judgment of a court of concurrent jurisdiction directly upon the point, is as a plea, a bar, or as evidence conclusive, between the same parties, upon the same matter directly in question in another court." This celebrated judgment has been ever since recognized in England and the U. States as a correct exposition of the rule. Some difficulty has, however, been found to exist, and some discrepancies will be discovered upon an examination of the numerous cases on this question as to the mode of ascertaining what was the point in issue between the parties, and whether proof *aliunde* for that purpose is admissible, or whether the point must not appear from the record. [See the numerous cases on this head collected, and arranged by Cowen and Hill, 3 vol. Phil. Ev. 826, 848.]

Necessarily, parol evidence must be admitted to identify the subject matter of the suit. "Every fact which exists on record, must be proved by the record. but when the question is as to the real subject matter of the suit, or to show a bar to another suit, the identity of the cause of action may be proved by other than record evidence. [Parker v. Thompson, 3 Pick. See also Cist v. Zeigler, 16 S. & R. 282; Robinson v. Windham, 9 Porter. 397.]

A former judgment is a bar only in reference to the subject matter of the suit, and the points there put in issue and determined; where, therefore, it is proposed to show, by the record of a judgment, that a certain matter was decided, it must appear from the record, that such matter was in issue, and then parol testimony may be admitted to show that the matter was in fact submitted to the jury. If the matter was not within the issue, such testimony is not admissible, as it would be, in effect, to contradict the record. [Manny v. Harris, 2 Johns. 24; Gardner v. Buckbee, 3 Cow. 120; Burt v. Sternburg, 4 Cow. 559; Wood v Jackson, 8 Wend. 9.] There are, however, numerous adjudications by courts of the highest respectability, which hold a much more restricted doctrine, and assert that it must appear from the record itself, that the matter again sought to be brought in question, was directly in issue in the former suit, and that parol testimony in aid of the record, is inadmissible. [Sintzeninck v. Lucas, 1 Esp. 43; Church v. Leavenworth, 4 Day, 274; Smith v. Sherwood, 4 Conn. 276.]

Admitting, then, as it seems to be the more reasonable doctrine, and better adapted to the proper administration of justice, that parol evidence is admissible to prove that a particular matter was, in fact, submitted to the jury, and passed on by it—such matter being in issue—the question here is, what was put in issue by the pleadings, and therefore, proper to be passed upon by the jury? It was not that the property levied on was liable to the execution of the plaintiff, in which event, as has been previously shown, the validity of the deed would have been directly put in issue; but it was, that, when the levy was made, the property was subject to the satisfaction of the execution. Now, it is most obvious, that the question here presented for the determination of the jury, did not involve the validity of the mortgage. On the contrary, it admits, by implication, its binding force. Such being the state of the case, it was inadmissible to prove, by evidence

Davidson and Stringfellow v. Shipman, et als.

*aliunde*, that the validity of the mortgage was passed on by the jury.   It is very clearly proved, that the validity of the mortgage was contested before the jury; but who can undertake to say its invalidity was found by the jury.   It was not necessary that they should pass upon it; and, therefore, *non constat*, that they did pass upon it.   There would be no security whatever for private rights, if an *estoppel* could thus be created by parol testimony not warranted by the record.

In this case, it appears that, when the levy was made, the defendant in execution had such an interest in the property as could have been seized and sold by the sheriff, but that this possessory interest had ceased to exist when the claim was interposed.  From that time the possession, or, at least, the right to the possession, was vested in the mortgagees; and their demand of the sheriff put an end to his right to retain the slaves.   [Magee v. Carpenter, 4 Ala. 475.]   It results from this, necessarily, that the only proper issue to be tried was, the validity of the mortgage;  and that the issue which was tried, was wholly immaterial, and did not warrant the court in rendering judgment upon it ;  but that it should have awarded a repleader.   [Bennet v. Holbeck, 3 Saunders, 318, note 6.]

These views are decisive of the case.   The defendants do not attempt to invalidate the mortgage for fraud, except so far as the complainants were supposed to be concluded on that point by the verdict of the jury; and it is but justice to the chancellor to add, that his opinion coincided with those here expressed; but he yielded his own opinion to the decision of this court in the late case of the Planters' and M. Bank v. Willis & Co. [5 Ala. Rep.] In so doing, he gave to that decision an effect not intended by this court.   All that we meant to determine was, that, upon the proper issue, whether before or after the law day had arrived, a verdict by the jury against the claimant would be conclusive of his rights under the deed.

This court has undoubtedly the power to *proceed and render a decree* in this case; but as the court of chancery would have had the power, in its discretion, to permit an amendment of the answer, so as to raise the question of fraud in fact, we think it proper to remand the cause for further proceedings ;  but as both parties appear to be equally in fault, this is not considered a proper case for costs; each party will, therefore, pay his own costs in this court.