Ansley v. Pearson et al.

----

## ANSLEY v. PEARSON, ET AL.

1. Certain slaves were mortgaged by G. to A., by deed dated in February, 1841, to secure two promissory notes, maturing on the 15th August of the same year; these slaves were levied on in March, 1841, by attachments, at the suit of P. and others, and a claim interposed pursuant to the statute, by the mortgagee, to try the right of property; a trial was accordingly had, and the slaves adjudged liable to the payment of G's debts: afterwards, the mortgagee filed his bill in Equity, alleging that the validity of the mortgage was not controverted by the plaintiffs in attachment, but was rejected by the Court as evidence, on the trial of the right, at the instance of the plaintiffs, on the ground merely, that it did not tend to prove the issue on the part of the claimant; which was, whether G. had such an interest in the slaves as was subject to the attachments. The plaintiffs in the attachments and the mortgagor were made defendants to the bill, which prayed a foreclosure of the mortgage, and that the judgment upon the trial of the right of property might be injoined, &c.—*Held*, that the judgment by

which the slaves were determined to be liable to the attachments, did not, under the facts alledged, impair the equity of the bill ; and that the bill was not objectionable for multifariousness.

2. *Quere:* Where several levies are made upon the same property at the same time, and several trials of the right are had, if upon verdict of con-demnation, the jury assess the full value of the property, in each case, and judgments are rendered accordingly, is it not competent for the Court in which the trials are had, to correct its judgment, so that the claimant may not be charged beyond the value of the property ?

Appeal from the Court of Chancery sitting at Tuskegee.

In March, 1844, the plaintiff in error filed his bill, setting forth that in February, 1841, he sold to Matthew R. Glenn, two slaves, to-wit, Henny, a woman, and Jacob, her child, for the sum of seven hundred dollars ; to secure the payment of which, the purchaser, at the time of the sale, made his two promissory notes, one for $400, and the other for $300, payable to the plaintiff, on the 15th August next thereafter ; and a mortgage, bearing even date therewith was executed by Glenn to the plaintiff, on the slaves, to secure the payment of the notes. This mortgage, it is alleged, was duly acknowledged and recorded, of which the plaintiffs in attachment had notice. The note for four hundred dollars, was given in payment for the woman, and the other note for the boy ; on the former, Glenn paid the plaintiff the sum of three hundred and ninety six dollars and thirty cents, and gave him a note for three dollars and seventy cents, which fully paid off and discharged the same. The small note, and the note for three hundred dollars are still unpaid.

It is further stated, that on the third of March, 1841, three several attachments were issued against the estate of Glenn, viz ; one at the suit of John Day, for the use of Charles R. Pearson ; another, at the suit of Felix Simonton, for the use of Pearson & Simonton ; and a third, in favor of Charles R. Pearson—all returnable to the term of the Circuit Court of Macon next thereafter to be holden. These several attachments were levied on the slaves Henny and Jack, on the 7th March, 1841, then in the possession of Glenn. The plaintiff, under the advice of counsel, interposed a claim to the slaves, and gave bond, with surety, to try the right, pursuant to the statute ; afterwards, a trial was had upon the claim, in the Circuit Court, between the plaintiffs in the

attachments and the plaintiff in this cause, and the mortgage was rejected as evidence, because the mortgagor was in possession of the property, and the slaves were therefore adjudged liable to the attachments. The jury estimated the value of Henny at four hundred dollars, in each of the verdicts rendered by them, and Jack at two hundred dollars, in the suit of Day, for the use of Pearson, and in each of the other cases at two hundred and fifty dollars. It is stated that the plaintiff took possession of the slaves, under the mortgage, and they have been demanded of him on his bond, for their forthcoming, upon the right being determined against him; that he has delivered Henny to the sheriff, and tendered him two hundred and fifty dollars, the highest value assessed for Jack, but he refuses to receive the money, and has returned the bonds in all the cases, forfeited, as it respects Jack. Executions have issued in each of the cases for the value which the verdicts have ascertained; thus requiring the sum of seven hundred dollars to be made, when the highest price at which Jack was estimated, was two hundred and fifty dollars.

It is further alleged, that if the slave Jack is sold by the sheriff, the plaintiff will probably lose his debt, as he may be removed without the State, and Glenn is wholly insolvent, has absconded, and gone to parts unknown.

Immediately after the trial of the claim of property, the plaintiff was served with process of garnishment, at the suit of Matilda Daniel, requiring him to appear at the Circuit Court of Macon, and state whether he was indebted, &c. to Charles R. Pearson; which garnishment is still pending. Pearson is insolvent, and has (as plaintiff believes) transferred his interest in the claims on which the attachments are founded, &c.

The bill prays a foreclosure of the mortgage, &c., and that all proceedings on the judgments rendered on the trials of the right of property, may be enjoined, &c.

Simonton asd Pearson answered; publication was made as to Glenn, and as to him and Day the bill was taken *pro confesso*. But it is needless to recite the substance of the answers, as the bill, on motion of the defendants, was dismissed as to Simonton, Pearson and Day, for want of equity.

WILLIAMS and POPE, for the appellant.

Ansley v. Pearson, et al.

N. W. Cocke, for the appellees, made the following points :

1. Where personal property, at the time of the levy, is in possession of the defendant, and a claim is interposed by a mortgagee, if the issue is *general*, a verdict in favor of the plaintiff in execution, is a condemnation *absolutely*, of the property, to the satisfaction of the execution. [Davidson & Stringfellow v. Shipman, et al, 6 Ala. Rep. 27.]

2. A Court of Law may arrest the action of its own process, or if an execution improperly issues, may supersede it. So far then as the bill seeks to control the execution, either for its irregularity or oppressive use, it cannot be entertained. [Lockhart, et al. v. McElroy, 4 Ala. Rep. 572.]

3. The bill is multifarious in seeking to foreclose the mortgage as to Glenn, and to be relieved against the judgments recovered by the other defendants.

COLLIER, C. J.—The precise form of the issue, which was submitted to the jury in the trials of the right of property, is not shown by the record, but as the only proper issue, was an affirmation by the one party that the property levied on was subject to the attachment, and a denial of that fact by the other, we must intend that the issues were thus framed. If the defendant in the attachments had the possession of the slaves in question, as a mortgagor, with an undisputed right of possession as against the complainant, then he had an interest that could be levied on and sold, although the purchaser would take it subject to the incumbrance. [P. & M. Bank of Mobile v. Willis & Co. 5 Ala. Rep. 770.] The verdict and judgment upon such an issue as we have supposed, if in favor of the plaintiff, would be an unqualified condemnation of the property, to the satisfaction of the judgment, and execution. To avoid a result which must necessarily be unfavorable to the claimant, wnere he has not a present legal right, he should not interpose a claim at law, but seek the interference of Chancery, " for the purpose of ascertaining and separating the interests of the mortgagor." Williams & Battle v. Jones, 2 Ala. Rep. 314. See also, 5 Porter's Rep. 182; Davidson & Stringfellow v. Shipman, et al. 6 Ala. Rep. 35.

We are aware, that in several of the cases cited, it is strongly intimated that a verdict against the claimant who was a mortgagee, rendered upon the proper issue, would be conclusive of his

rights under the mortgage ; and this whether the mortgage was forfeited or not. But these intimations were not points there aris- ing in judgment, and must be regarded as mere incidental re- marks, not of authoritative influence. We will therefore treat the question 'as *res integra,* and briefly inquire how the judg- ments at law affect the complainant.

It is laid down generally, " that the judgment or decree of a Court possessing competent jurisdiction, shall be final as to the subject matter thereby determined." [Le Guen v. Governeur, et al. 1 John. Ca. 436. See 1 Blackf. Rep. 360.] So it has been held, that a verdict and judgment upon the merits in a former suit, is, in a subsequent action between the same parties, where the cause of action, damages, or demand is identically the same, conclusive against the plaintiff's right to recover, whether plead- ed in bar or given in evidence under the general issue, where such evidence is legally admissible. [Shaffer v. Stonebraker, 4 G. & Johns. Rep. 345. See also, 2 Pick. Rep. 20; 2 Taunt. Rep. 705; 7 Pick. Rep. 341; 8 Id. 171.]

Where the plaintiff offers evidence in relation to a claim con- tained in one count of his declaration, which evidence is reject- ed by the judge, and instead of striking out the count to which such evidence is applicable, the plaintiff suffers a general verdict to pass on the whole case, the judgment thereon will bar a new action for the claim so attempted to be established. [Smith v. Whiting, 11 Mass. Rep. 445; Irwin v. Knox, 10 John. Rep. 365 ; Phillips v. Berrick, 16 Id. 136.] In Wilder v. Case, 16 Wend. Rep. 583, the Court said, " it is well settled, where a mat- ter is improper by way of defence, in a justice's court, (for ex- ample by way of set off,) if a party will introduce it, and he goes into the investigation with a' view to make it available, and it passes and is submitted to the justice, or a jury, it cannot be heard again." But it is admitted, that if the demand had been rejected in the former suit, on the objection being raised, it would not have been barred ; but having been litigated, whether allow- ed or disallowed, it was barred. The only way in which the defendant in the former suit could have saved his demand from being barred by the judgment therein, was, by stopping short the moment its admission for the purpose proposed, was refus- ed by the justice.

It has been decided, that where an action is brought against a

defendant on two notes indorsed by him, and the case is submitted to the Court, who give an opinion in favor of the plaintiff, on both notes, but afterwards permit him to withdraw one of them, and then renders judgment in his favor for the amount of the other note only, he is not thereby precluded from maintaining a subsequent action against the defendant on the note that was thus withdrawn.   [Wood v. Corl, 4 Metc. Rep. 203.   See also, Curtis v. Groat, 6 Johns. Rep. 168 ; McLean v. Hugarin, 13 Id. 184; Wolfe v. Washburn, 6 Cow. Rep. 261 ; Skelding v. Whitney, 3 Wend. Rep. 154 ; Beebe v. Bull, 12 Id. 504 ; 2 C. & H.'s Notes to Phil. Ev. 963-5.]

If the record shows what matters were in issue, and decided, parol evidence is inadmissible to prove that other matters not within the issue were also decided.   [Manny v. Harris, 2 Johns. Rep. 24.]   It is competent to explain, but not to add to, or contradict a record ; and it may now be regarded as settled, in a great majority of the American Courts, that the record of a former suit may be explained and the matters to which it relates identified.   Every fact which exists on record, must be proved by the record ; but when the question is as to the real subject matter of a suit, or to show a bar to another suit, or to lay the foundation of an action of indemnity, the identity of the cause of action, may be proved by other than record evidence.   [3 Pick. Rep. 429, 434 ; 17 Serg. & R. Rep. 319 ; 6 T. Rep. 607 ; 1 N. Hamp. Rep. 35 ; 2 Id. 26, 61 ; 5 Mass. Rep. 337 ; 8 Pick. Rep. 113; 10 Wend. Rep. 80 : 3 Cow. Rep. 120 ; 2 Yerger's Rep. 467 ; 9 Porter's Rep. 397; 6 Ala. Rep. 27 ; 7 Ala. Rep.]

The learned annotators upon Phillips on Evidence, (p. 957,) as a deduction from the authorities, say, "Where the matter to be litigated in the second suit was involved in the former issue, and essential to the finding of the verdict, we have seen that it shall be taken conclusively to have been decided, (ante 594, p. 844 seq.) Where the matter might, or might not, have been tried consistently with the issue, it shall be taken to have been *prima facie* passed upon.   And accordingly, if the record shows that the first suit was apparently for the same cause of action sought to be litigated in the second, it will be *prima facie* evidence, that such cause of action has once passed *in rem judicatem;* and hence the *onus* will devolve on the party against whom the record is used to

Ansley v. Pearson, et al.

show the contrary." [16 Johns. Rep. 136 ; 6 Cow. Rep. 225 ; 9 Sergt. & R. Rep. 424 ; 2 Verm. Rep. 111, 114.]

The complainant alledges that the validity of the mortgage was not controverted by the plaintiffs in attachment, that it was rejected by the Court as evidence, on motion of the plaintiffs, not because it was objectionable as a security, but on the ground that it did not tend to prove the issue on the part of the claimant ; which was, whether the defendant in attachment had such an interest in the slaves as was subject to the attachments. Assuming this allegation to be true, as we must, upon a motion to dismiss the bill for want of equity, and it is perfectly clear that the validity of the mortgage, (whether an inquiry within the scope of the issue or not,) was not considered by the jury.

The cases of Smith v. Whiting, Irwin v. Knox, and Phillips v. Berrick, *supra*, are not like the present upon the point we are considering. There the evidence was offered by the plaintiff, for the purpose of sustaining one of the counts in the declaration, and though it was rejected, yet the plaintiff did not strike out that count, or enter a *nolle prosequi* thereon, but the jury were permitted to render a general verdict upon the whole case made by the pleadings. The record itself showed that the matter was submitted for trial, while here the validity of the mortgage was not necessarily passed on ; and in order to do justice, the complainant should be allowed to show what transpired at the trials of the right of property. Such evidence, instead of contradicting, is merely explanatory of the record.

It may be conceded, so far as this case is concerned, that it was competent for the plaintiff to have waived all objection to the admissibility of the mortgage as evidence, and then have shown that it was invalid. Yet, according to the principles we have stated, and the authority by which they are sustained, it is unquestionably clear, that it was not allowable for the claimant to show, that the mortgage instead of being admitted was in fact rejected. Such proof, (we have seen,) is permissible upon the ground, that the matter though involved in the trial of the right of property was not *essential* to the finding of the verdict.

If the judgments upon the trial of the right of property were irregularly entered, so as to charge the complainant with thrice the value of the slaves; or if the executions were oppressive, or unauthorized by the judgments, we are inclined to think it would

have been competent for the Court of Law, to apply the corrective in some form. But our conclusion upon the point first considered, renders the consideration of this unnecessary.

The objection to the bill for multifariousness, we think, cannot be supported. In order successfully to resist and perpetually enjoin the judgments, it was necessary to show that the mortgage was valid. In a controversy of this character the plaintiffs in the attachments and the mortgagor, were all proper parties. The prayer for an injunction was necessary to make a decree of foreclosure available ; and a foreclosure, if the mortgagee was entitled to the benefit of his security, was necessary to the final adjustment of the rights of all the parties in interest. If the slaves are of value more than sufficient to satisfy the complainant's lien, the attaching creditors are entitled to the excess to satisfy their judgments. See Williams & Battle v. Jones, *supra*.

Upon the first question examined, the decree is reversed, and the cause remanded.