# HUTCHINSON *vs.* DEARING.

1. A decree in chancery is binding on all who are parties or privies to it, and concludes them as to every fact necessary to be ascertained before the final decree was rendered.

2. A mortgagor in possession may hire or lease the mortgaged property, and receive the rents and profits, until the mortgagee notifies the lessee or hirer not to pay such rents or profits to the mortgagor.

3. Notice from the mortgagee to the lessee or hirer, not to pay the rents or profits to the mortgagor, intercepts the rents and profits then due and unpaid, as well as those which may subsequently accrue, and the mortgagee becomes entitled to them.

4. Where a mortgagor of slaves puts them into the possession of his son-in-law, under the belief that they would be more profitable under his control, and for the purpose of enabling himself the more readily to pay off the mortgage debt, and with the agreement between them that, when the debt was paid, they should come to some understanding respecting the value and ownership of the slaves, and the mortgagee was apprized of this agreement, and assented

to it, he may, after notice to the son-in-law, bring assumpsit against him for the services of the slaves, notwithstanding he has previously filed a bill of foreclosure, and obtained a final decree thereon; *Provided*, it appears that the son-in-law was not made to account for said hire by the bill.

5. The Appellate Court will not reverse on account of a charge which asserts a correct legal proposition, although it may be objectionable from its generality. It is the duty of the party in such case, to ask more specific and definite instructions.

ERROR to the Circuit Court of Dallas.

Tried before the Hon. E. Pickens.

This was an action of assumpsit brought by Dearing against Hutchinson, to recover for the services of certain slaves. Upon the trial it appeared, that the slaves originally belonged to James Jackson of the State of Georgia, but the slaves were on a plantation in the county of Lawrence in the State of Alabama; and the said Jackson, being indebted to the said Dearing, in the sum of $11,036 $\frac{50}{100}$, did on the 24th day of October, 1840, execute to him a mortgage on the said slaves, with others, to secure the payment of said sum, which fell due on the first of January, 1841. It further appeared, that under an agreement made between Jackson and Hutchinson, Hutchinson took possession of said slaves, and removed them to South Alabama; but it does not appear, that he was to pay any specific sum by way of hire, or that he bought them; but the object of Hutchinson in taking them into his possession seems to have been, to employ the slaves more profitably, and thereby to extinguish the mortgage debt, or aid the mortgagor in doing so; and when this should be accomplished, Hutchinson and the mortgagor, Jackson, were to come to some agreement respecting the ownership of the slaves. It further appeared, that Dearing had notice of this arrangement, and sanctioned it; at all events, he did not object to it. Some time in 1843, Dearing filed his bill in equity to foreclose said mortgage, both against Jackson, the mortgagor, and Hutchinson, who had the slaves in his possession. At the December Term, 1844, of the Chancery Court, a decree of foreclosure was rendered, and it was referred to the register to ascertain the amount of the mortgage debt, who reported that $12,705 were due the mortgagee, for principal and interest. This report was confirmed, and the negroes were sold by the register

on the first Monday in October, 1845, and brought the sum of $9,107$\frac{5}{100}$, the whole of which was paid over to Dearing, except the sum of $195, which was retained by the register to satisfy the costs of suit. The evidence tended also to show, that several payments were made on the mortgage debt, but that most of them were made after the taking of the account in the equity suit, and before the bringing of this suit. The plaintiff claimed hire for the slaves, from the time of filing the original bill, and notice thereof to Hutchinson.

The court instructed the jury, that the account taken in the chancery suit was conclusive of the amount then due, but that payments since made could be shown, to prove satisfaction of the mortgage debt.

The defendant requested the court to charge the jury, that if the plaintiff recommended or assented to the sale or transfer of the slaves by Jackson, the mortgagor, to Hutchinson, without any agreement that Hutchinson should pay hire to the plaintiff, that then he could not recover. This charge the court refused to give; and instructed the jury, that if the defendant purchased the slaves with notice of the mortgage, and subject thereto, he was liable for hire after the filing of the bill and notice thereof to him.

The defendant also requested the court to charge the jury, that if the proof showed that the mortgage debt had been paid in full, then the plaintiff could not recover. This charge the court gave, with this qualification, that whether the debt was paid in full or not, must be determined by taking the chancery decree as showing the true amount due at that time, and then deducting such payments as had been subsequently made.

The defendant further requested the court to charge the jury, that the measure of damages should not exceed the amount now due upon the mortgage debt. This charge, the court also gave, with the same explanation or qualification that was given to the charge next preceding it.

The defendant further requested the court to charge the jury, that the record in the chancery suit was evidence of a former recovery; which charge, the court also refused to give. To the refusals to charge as requested, and to the charges given, the defendant excepted; and the court, at his instance,

signed and sealed a bill of exceptions, which is here assigned for error.

GEORGE W. GAYLE and SAMUEL F. RICE, for the plaintiff in error, contended:

1. That in the absence of any express contract to pay the plaintiff for the service or labor of the slaves, he cannot bring assumpsit, even if there was a liability on the part of the defendant to pay for such services. They cited Smith v. Stewart, 6 John. Rep. 46; 13 John. 489; 2 Taunt. 145; 17 Ala. 51; 1 St. & Por. 294; Chitty Pl. 107, and note.

2. That Dearing, by assenting to the sale or transfer of the slaves to Hutchinson, made by Jackson, deprived himself of all right to demand of him hire for the slaves. Wallis v. Long, 16 Ala. 138.

3. That it was proper to have made the defendant, Hutchinson, account for the hire in the chancery suit, and the failure to do so, precluded the defendant from recovery in this action. Gary v. Boykin, 7 Ala. 154; 4 Ala. 541.

4. That the charge of the court subjected Hutchinson to the payment of hire, even after the slaves were sold and delivered to the purchasers under the decree of foreclosure.

WATTS, JUDGE & JACKSON, contra, insisted:

1. That the decree of foreclosure, as it ascertained the amount then due on the mortgage debt, was conclusive against the defendant, as he was a party to said suit.

2. That the mortgagee is entitled to recover the rents and hire of the tenant of the mortgagor, after notice. They cited Coke v. Pearson, 6 Ala.; Chambliss v. Maulden, 4 Ala. 484; Smith v. Taylor, 9 Ala. 633.

3. To show that assumpsit is the proper remedy, they cited Davidson v. Earnest, 7 Ala. 817.

4. To show that the decree in the foreclosure suit did not preclude the plaintiff from bringing this action, they cited Davidson & Stringfellow v. Shipman, 6 Ala. 34; 1 Starkie on Ev. 221, 222, and note; Greenl. Ev. Vol. 1, §§ 228, 229, 230.

DARGAN, C. J.—All persons who are parties or privies to a decree, rendered by a Court of Chancery, are bound by

it. Perkins' Ed. of Daniel's Ch. Prac. vol. 2, 1210, note; and of course are concluded as to every fact necessary to be ascertained, before the final decree is rendered. It follows from this rule, that the account taken before the register in the chancery suit, is binding on Hutchinson; he was a party to the bill of foreclosure, and it was certainly necessary in that suit to ascertain the mortgage debt. This was done in the proper manner, and the amount that was thus ascertained, is conclusive on all who were parties to that bill.

2. The material question in this case, however, is, can this action be sustained, to recover for the services of the slaves under the circumstances disclosed by the bill of exceptions? James Jackson owned the slaves, and mortgaged them to the plaintiff. Afterwards, the defendant Hutchinson, the son-in-law of the mortgagor, agreed to take the slaves into his possession and employ them, under the belief that they would be more valuable in his possession, and aid the mortgagor in paying off the mortgage debt; and when this should be done, then Jackson and Hutchinson were to come to some understanding respecting the value and ownership of the slaves.

This appears to be the substance of the agreement, under which Hutchinson obtained the possession of the slaves. Dearing, the plaintiff, was advised of this agreement, and fully assented to it. Upon these facts, can Hutchinson be made liable to the mortgagee, *in assumpsit*, for the services of the slaves? We think the law is well settled, that the mortgagor may hire or lease the mortgaged property, and receive the rents or profits, until the mortgagee give notice to the tenant not to pay to the mortgagor; such notice, however, determines the right of the mortgagor to receive the rents and profits that were unpaid at the time the notice was given, and if the tenant should disregard the right of the mortgagee, and pay to the mortgagor after notice, he must be held liable to the mortgagee, notwithstanding such payment. Moss v. Gallemore, Douglass, 266; Pope v. Biggs, 9 B. & C. 245; Mansony & Hurtill v. The United States Bank, 4 Ala. 735.

In such cases, however, there is an express contract to pay rent or hire to the mortgagor, who is but a tenant at sufferance of the mortgagee, who may approve his acts in leasing the mortgaged premises, and put an end to his right to re-

ceive the rent, *not paid*, by giving notice to the tenant. But in the case before us, there was no specific agreement to pay to any one, any specific amount, yet it is manifest that it was not intended that Hutchinson should have the services of the slaves as a donation; he received them into his possession, that their services might become more valuable, and the mortgage debt thereby more *readily or easily paid*, and the mortgagee assented to this arrangement. As it was not intended to make a gift to Hutchinson of the labor of the slaves, it must have been intended that their labor and services should go towards the extinguishment of the mortgage debt; for the extinguishment of this debt, and the protection of the property for the benefit of the mortgagor, was the leading object of the agreement, by which the slaves came into the possession of the defendant. It must, therefore, have been understood, that Hutchinson should pay for the hire or services of the slaves; for it was not, and could not have been the intention, that he should have such services or hire without paying any thing either to the mortgagee or mortgagor. And this being the nature of the contract, I do not think it material, to inquire whether Hutchinson was to account to the mortgagor or to the mortgagee. For if he was to account for the hire to Jackson, then under the authorities referred to, Dearing, the mortgagee, could interdict payment to him, and claim the value of such hire or services in extinguishment of his mortgage.

But it is insisted that, even if the defendant be liable for the hire, assumpsit is not the proper remedy. I, however, think it clear, that where one has enjoyed the use and profits of property, with the consent and permission of the owner, and from the nature of the agreement it cannot be inferred that the use and profits were intended as a gift, but that the party should account in some mode for the same, assumpsit may be brought, by him who is entitled to such use and profits. This is the substance of the decision of this court, in the case of Davidson v. Ernest, 7 Ala. 817; and it has been followed in several cases since. It was founded on the case of Hull v. Vaughn, 6 Price, 157, and the reasoning of that case, I think, unanswerable. Indeed, if it be true that by giving notice to the tenant of the mortgagor, the

mortgagee becomes entitled to all the rents unpaid at the time of notice, I can see no other mode in this country to enforce the recovery of the rents *as such*, than by an action of assumpsit, unless indeed it could be done by a bill to foreclose. To bring ejectment, would put an end to the tenancy, and the damages that might be recovered for the detention, would not be rent *eo nomine*, and I very much doubt, when we consider that the mortgagor is entitled to recover the rents, until notice be given by the mortgagee not to pay, whether damages could be recovered for any time anterior to the notice; and all the English cases agree, that the mortgagee, by giving the notice, becomes entitled, not only to the rents subsequently falling due, but also to all rents in arrear and not paid to the mortgagor; and if this be the extent of the mortgagee's right, in my judgment, assumpsit is the most appropriate remedy to recover the rent.

As to the measure of the defendant's liability, under the view we have taken, it is apparent that he was liable for all the hire or profits of the slave, that he had not paid or accounted for, either to the plaintiff or to Jackson, the mortgagor, before notice to the defendant not to pay to him. The charge of the court, therefore, which limited his liability to the time of filing the bill of forclosure, could not in any manner prejudice the defendant, for there was no pretence, that after that period he had paid hire to the mortgagor; indeed, it does not appear, that he ever accounted to Jackson for hire at all.

It is further insisted, that the plaintiff is precluded from recovering, because he might have compelled the defendant to account for the hire, by his bill of foreclosure. Without saying whether he could or not, it is sufficient to say that he did not, and was not compelled to require the defendant to account for the hire in that suit. He had his remedy at law to recover for the hire, and his remedy in equity to foreclose the equity of redemption; and his pursuing the one, is no bar to his right as to the other. Davidson & Stringfellow v. Shipman, et al. 6 Ala. 27, and cases there cited.

The only other point insisted on, is, that the charge of the court was calculated to charge the defendant with the hire of the slaves, even after they were taken from him under the decree of foreclosure. But we cannot indulge the presump-

tion, that either the court or jury for a moment could entertain the idea, that the defendant was liable for hire after the slaves were taken from his possession. The charge bearing on this point, is, that the defendant was liable for hire after the filing of the bill, and notice thereof to the defendant; and we have seen, that under the evidence applicable to this charge, it is not erroneous; at least it cannot be, so far as the defendant is concerned. And if it were thought possible that the jury could have been misled by it, so as to give hire after the slaves were taken from the defendant's possession, it could easily have been prevented, by requesting the court to instruct the jury, that the defendant was not liable for the services of the slaves after they were taken from his possession in obedience to the decree of foreclosure. But it is apparent that no one thought it necessary to call for instructions, informing the jury that the defendant was not liable for hire, after the possession was taken from him; and to suppose that they were misled by the generality to the charge, would be to deny their common intelligence.

After a deliberate examination of all the questions raised in the argument, we are satisfied, that as the case is presented by the record, there is no error, and the judgment must be affirmed.