# Watford *et al. v.* Oates.

*Bill in Equity to Foreclose Mortgage, and for Account of Rents and Profits.*

1. *Service of summons; operates as notice to whom and of what.*—A summons issuing on an original bill, and served on a defendant, operates as constructive notice to him and to all persons afterwards acquiring rights under him, of the claim, title, and rights asserted in the bill.

2. *Mortgagee entitled to rents, &c.; when payment to mortgagor will not absolve tenant.*—A mortgagee, unless the contrary is expressed in the mortgage, is entitled to possession, rents and profits, and whenever a tenant in possession has notice that the mortgagee claims the rents, a subsequent payment by such tenant to the mortgagor will be in his own wrong, and will not absolve him from the legal duty to pay the rent to the mortgagee.

3. *Owner of mortgage debt in possession; duty in applying rents after notice of subsequent claims.*—Where one of several owners of a mortgage debt is in possession collecting rents, and a bill is filed by subsequent encumbrancers to have the several liens established, and notice of their claims is given to such party in possession by a summons served upon him as a defendant to such bill, it becomes his duty after such service to apply the rents to the mortgage debt, and on failure to do so he must account for the same.

4. *To secure reversal, error must be shown;* it is not enough that the question is left in doubt.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. B. B. McCRAW.

One Koonce, a party defendant to the original bill in this cause, sold a certain store-house and lot described in said bill to one L. L. Teague, another defendant, and made a

[Watford et al. v. Oates.]

deed of conveyance to his wife, Mary Teague, in consideration of which said L. L. Teague was to assume and pay all the debts then outstanding against said Koonce, which he had contracted in mercantile business. Before said conveyance, one Pratt & Tignor recovered a judgment against Koonce, upon which execution was duly issued, but no levy was made. On September 6, 1871, said judgment was assigned to one J. N. Lightfoot. On January 30, 1871, after Koonce had conveyed to Mary Teague, she and her husband, to secure the payment of said debts of Koonce, gave a mortgage upon said store-house and lot for $605.85 to one Bernstein & Stowe, who, on the same day, sold and transferred said mortgage to said Lightfoot, who, on the 15th of December, 1871, transferred said mortgage and judgment to Wm. M. Jackson, M. Holmes, and A. J. McAllister. The law-day of said mortgage was November 1, 1861, before which day said Teague let said store-house to said Wm. M. Jackson for $25 per month. In the early part of 1872, Teague and wife left the store. On the fourth of March, 1872, the appellee, Wm. C. Oates, filed this bill, as a creditor of said Koonce, to compel a foreclosure of said mortgage and a sale of said store-house and lot, and an appropriation of the proceeds and rents to the payment of the debts of said Koonce, contracted by him in his mercantile or grocery business. After the filing of said bill, and on the 16th of March, 1872, said Wm. M. Jackson sold and transferred his own half interest in said note and mortgage and judgment to the complainant, who, upon the first day of April, 1872, filed an amended bill, setting forth the fact of his purchase, and praying a foreclosure of said mortgage and a sale of said property, and praying that said Jackson, who was a party-defendant to said bill, should be required, by order of the court, to pay the rents into said Chancery Court as the same became due. At the fall term, 1872, of said court, a sale of the house and lot was decreed, and a decree was also rendered against said Jackson for $87.50, due on the rents of said house and lot, which he never paid. At the beginning of the year 1872, the appellant, Watford, became a partner of said Jackson in the grocery business, which they carried on in said store-house. They paid the rent therefor to Mary Teague for January and February, 1872. They continued in business until just before the first of August, 1872, when Jackson sold his interest to the appellant, Young, whereupon Jackson left the State, and the appellants continued their occupancy of said house until the end of the year 1872.

[Watford et al. v. Oates.]

On the first Monday in January, 1873, said store-house and lot was sold by the register and purchased by appellant, but did not bring more than enough to pay the mortgage and judgment, and the creditors at large received nothing whatever. It is claimed by appellees that appellants both knew all the time, and appellant, Young, knew long before his occupancy, that the bill in said Chancery Court was pending, and that each of them had actual knowledge that the appellee, as complainant, was claiming the rents of said store-house and insisting upon the same being paid over to the court. On the first day of April, 1873, the appellee filed a supplemental bill (upon the refusal of appellants to pay any rent and the cause still being *in fieri*) to compel the appellants to account for the rent of said store-house during their occupancy, and propounded interrogatories to them. Watford failed to answer, and a decree *pro confesso* was taken against him. Young answered and demurred for insufficiency in equity, but abandoned the demurrer at the hearing. The appellee swears that soon after the original bill was filed he informed Young thereof, and read the bill to him and explained its character and purpose; that Young expressed dissatisfaction, and said that he never would get anything. Appellee replied that the proceeds of sale of the house and lot and the rents would, he thought, create a fund very nearly sufficient to pay all the claims against said Koonce. Appellant, Young, admits, in his answers to the interrogatories of the supplemental bill, that he had notice in the manner testified to by the appellee. Appellant, Young, says in his answer that he "considers that he did pay said Jackson rent for the said house during the time respondent occupied it, as the occupancy of said house, *without further charge,* was included in the purchase from said Jackson. Respondent knew before September, 1872, that the bill of the character specified was filed in the said Chancery Court. But respondent never fancied that he would be held responsible to complainant for the rents, or that any one else would be held responsible to the complainant by the Chancery Court for rent, although the prayer in said original and amended bill set up a claim to said rent."

The decrees of the court, granting the relief prayed for by complainant, are now assigned as error.

JAS. G. COMER, with whom was J. L. PUGH, for appellants.—1. Complainant filed a supplemental bill to render defendants, Young & Watford, liable for the rent while said

store was in their possession. They were not parties before the filing of this supplemental bill.—*Smith v. Taylor*, 9 Ala. 633; *Hutchinson v. Dearing*, 20 Ala. 798; *Bank v. Fry*, 23 Ala. 770. The chancellor decreed that they were liable for rent during the time said store was occupied by them, and in this he erred.—See authorities *supra*, and, also, *Knox v. Easton*, 38 Ala. 345.

2. Teague and wife were the owners of said store, and while such owners leased the same, as they certainly had the right to do, to defendant, Jackson; and defendant, Jackson, sublet to defendant, Young. The rent was paid by Young to Jackson, and the contract of renting was for the balance of 1872. We submit that the chancellor erred in impairing by his decree the contract entered into between Young and Jackson.

3. As to defendant, Watford, he had nothing to do with accounting with said Teague for the rent. The contract of renting was made with Teague by Jackson, before any partnership was formed between said Watford & Jackson, and Watford, if owing any rent at all, was owing it to Jackson; and, when Young bought out Jackson, Watford stood in the same relation to Young, with respect to the rent, that he did to Jackson.

WM. C. OATES (*per se*), *contra.*—1. The appellee owned a half interest in the mortgage and judgment, and when the property was sold and purchased by appellee, the register, out of the proceeds, paid off Holmes and McAllister their interest in said judgment and mortgage, but appellee still had a right to recover the rents which had accrued prior to the sale under the decree of foreclosure.—*Coker v. Pearsall*, 6 Ala. 542; *Hutchinson v. Dearing*, 20 Ala. 798.

2. The appellants, under the doctrine of *lis pendens*, could not avoid responsibility for the rent of the house and lot; but they each had actual notice.—*Harris v. Carter*, 3 Stewart, 233; *Chaudron v. McGehee*, 8 Ala. 570.

3. A purchaser at a sheriff's sale, pending a suit in chancery respecting the property, is chargeable with constructive notice of the equities asserted in the bill.—*Fash v. Ravisies*, 32 Ala. 451; *Winston v. Westfeldt*, 22 Ala. 760.

STONE, J.—1. The assignments of error, only bring up the question of liability for rent. The summons, issued on the original bill, was served on defendant, Jackson, March 7, 1872. This was constructive notice to him, and to all.

persons afterwards acquiring right or interest under him, of
the claim, title and rights asserted in the bill.—*Harris v.
Carter*, 3 Stew. 233; *Chaudron v. McGehee*, 8 Ala. 570;
*Fash v. Ravisies*, 32 Ala. 451; *Winston v. Westfeldt*, 22 Ala.
760. The bill charges (and such is the fact) that the mort-
gage of Teague and wife to Bernstein & Stowe, of the store-
house and lot described in the bill, was then past due; that
such mortgage was then the property of Jackson, Holmes &
McAllister, and that they were in possession of the mortgaged
property. The complainant alleged that he was a creditor of
Koonce, having a lien in equity on said property, arising
out of the contract made between Koonce and Teague; and
the object and prayer of the bill were to have the several
liens established, and the property sold in payment thereof.
It is shown in the record that Jackson, one of the three
owners of the mortgage, and also of a judgment lien upon
the property, was in possession, and Watford about that
time, or before, became his partner, and also went into
possession with him. The pleadings and testimony show
that there was a lien on the mortgage property to secure
complainant's debt described in the original bill, together
with other debts standing in like condition; but it is con-
ceded this lien was subordinate to that conferred by the
mortgage.—See *Buford v. McCormick*, present term.

The first amended bill was filed April 1, 1872. It averred
that on the 16th day of March, 1872, complainant purchased
from Jackson his interest, which was one-half of said
judgment and mortgage securities. In it, complainant
prayed "that said Jackson be restrained, by the order of this
honorable court, from paying over to any one any portion of
what he owes, or may hereafter owe, for the rent of said
store or grocery-house, and that he be required to pay the
same into this court, as the same falls due, to be disposed of
by the final order and decree of your honor."

In August, 1872, Jackson sold to Young his interest in the
store, who then went in, and the house was occupied by
Young & Watford as a store, until January 1st, 1873. No
rent was paid into court, or to the complainant, or applied
to said mortgage, or any other debt having a lien on the
property. Young filed his answer, admitting he had actual
notice of the pendency of the suit, before he purchased from
Jackson. Watford did not answer, although personally sued.
The bill was taken as confessed against him.

Jackson was examined as a witness before the register, and,
among other matters, testified as follows: "When Mrs.

[Watford et al. v. Oates.]

Teague left, which was in March, 1872, I paid the rent due up to the last of April, 1872. And when she was ready to leave, she informed me that, as long as I had been a good friend to her, she would exact no more rent from me. Since the departure of Mrs. Teague no one has demanded the rent of said place." It will be observed that in this testimony, it is not shown when Jackson paid the rent up to the last of April; whether before or after March 7, when summons was served on him. There is no other testimony in the record bearing on this question.

2. A mortgagee, unless the contrary is expressed in the mortgage, is entitled to the possession, and to the rents and profits of the mortgaged property; and whenever a tenant in possession has notice that the mortgagee claims the rents, a subsequent payment, by such tenant, to the mortgagor, will be in his own wrong, and will not absolve him from the legal duty to pay the rent to the mortgagee, or owner of the mortgage debt.—*Doe ex dem. v. McLoskey*, 1 Ala. 708; *Mansony v. U. S. Bank*, 4 Ala. 735; *Coker v. Pearsoll*, 6 Ala. 542; *Hutchinson v. Dearing*, 20 Ala. 798.

There can be no question that Young & Watford, under the rules above declared, were and are liable for rent after they took possession as partners. They had notice, both constructive and actual. Neither is there any doubt that Watford, with Jackson, was liable to account for rent, after the first amended bill was filed, April 1. He had then constructive notice that the rents were claimed on the mortgage debt.

3–4. How does the question stand as to the rent for the month of March? Was it the duty of Jackson, being in possession, and being one of the owners of the mortgage debt, to apply the rents towards the reduction of his claim, that the property might be, *pro tanto*, disencumbered for the benefit of subsequent encumbrancers? And, failing to do so, is he liable for the sum he might thus have saved to them? The original bill notified him there were such claims, and it charges the insolvency of Koonce. We hold that after the service of summons on him, March 7, it was his legal duty, under the facts shown in this record, to apply the rents to the mortgage debt; and failing to do so, he must account for the same. 2 Washb. Real Prop. 3d ed. 208, marg. page 579. The proof, as we have shown above, fails to show that Jackson paid the rents to Mrs. Teague before March 7, when he was served with summons; and we find nothing to justify us in reversing the chancellor's decree, holding Watford liable for the March

rent.   To relieve himself from this liability, Watford should
have seen to it that this doubt, as to date of payment by
Jackson, was cleared up.   To secure reversal, error must be
shown.   It is not enough that the question is left in doubt.

The only questions presented by this record are, whether
Watford is liable for rent from March to September, and
whether Watford & Young are so liable for the four months
they had the possession.   The chancellor decreed that they
were, and the principles we have announced above show that
he did not err.

Decree of the chancellor affirmed.